[No. S055733. Aug. 27, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO ALBERTO CORTEZ, Defendant and Appellant.

COUNSEL

Wesley A. Van Winkle, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne, John R. Gorey and A. Scott Hayward, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BAXTER, J.—

INTRODUCTION

In *People* v. *Swain* (1996) 12 Cal.4th 593 [49 Cal.Rptr.2d 390, 909 P.2d 994] (*Swain*), we held that the crime of conspiracy to commit murder requires a finding of unlawful intent to kill, i.e., express malice, and that such offense cannot be committed if the underlying criminal objective is second degree *implied malice* murder. (*Id.* at p. 603.) Left open in *Swain* was the question of whether the crime of conspiracy to commit murder is further divisible into degrees with differing punishments, or whether it is a unitary offense for which the punishment is that prescribed for murder in the first degree in every instance. (*Id.* at p. 608.) We granted review in this case to decide that question. We conclude all conspiracy to commit murder "is necessarily 'conspiracy to commit [premeditated] first degree murder' " (*id.* at p. 609) and is therefore punishable in the same manner as first degree murder pursuant to the provisions of Penal Code section 182.

Our order granting review additionally asked the parties to address the related question of whether the trial court below erred in failing to instruct the jury on premeditation and deliberation with regard to the conspiracy to commit murder charge. Given our holding that conspiracy to commit murder is a unitary offense punishable in every instance with the penalty prescribed for first degree murder, there is no occasion or requirement for the jury to further determine the "degree" of the underlying target offense of murder,

and thus no need for specific instruction on premeditation and deliberation respecting the conspiracy charge. The judgment of the Court of Appeal reached these same conclusions and accordingly shall be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

The question before us is one of law; the facts are not disputed and can be briefly summarized. This prosecution arose out of a 1992 Los Angeles street gang shooting. At that time, defendant Mario Alberto Cortez (also known as "Psycho") had been a member of the gang Crazy Cats for about one year. In the summer of 1992, the Crazy Cats and another street gang, the King Boulevard Stoners (also known as the "Stoners" or "KBS"), were "having a war," with "shootings going back and forth daily." Three weeks prior to the shootings in this case, a member of the Crazy Cats named Javaco (also known as "Smiley") had been killed in a drive-by shooting attributed to the King Boulevard Stoners.

After midnight on July 13, 1992, defendant and another member of the Crazy Cats, Mauricio Corletto (also known as "Dusty"), decided to retaliate for Javaco's death by doing a drive-by shooting in King Boulevard Stoners territory. At that time, the King Boulevard Stoners spent their summer nights smoking marijuana and drinking beer in the Wadsworth Junior High School schoolyard. Defendant and Corletto drove to this schoolyard in a stolen Cadillac. Defendant drove the stolen vehicle; Corletto sat in the rear seat with a loaded .357 magnum for use in the drive-by shooting.

Substantial prosecution evidence, including tape-recorded statements given to police by both defendant and a King Boulevard Stoners gang member, established that Corletto leaned out of the Cadillac's window, yelled "Crazy Cats," and fired four shots into the schoolyard. King Boulevard Stoners members returned the fire, hitting Corletto in the temple. Defendant attempted to drive away but the Cadillac stalled and he was forced to flee on foot. Several carloads of Crazy Cat gang members arrived, the stolen Cadillac was retrieved, and more gunfire was exchanged. When the smoke cleared and authorities arrived on the scene, paramedics found Corletto lying on the ground with a gunshot wound to the head. He was placed on life support but died from his wounds the following day.

Defendant testified at trial and in some respects sought to contradict his earlier tape-recorded description of these facts. On direct examination he claimed that although he and Corletto originally planned a drive-by shooting, they changed their minds when they could not convince any other Crazy Cats members to join them. The reason they went to the King Boulevard

schoolyard was "to check it out to see who was there, how many of them were there." Corletto was killed when the Cadillac stalled and King Boulevard Stoners members attacked. However, prior to waiving his rights and furnishing the tape-recorded statement to police, defendant told detectives he had gone to the schoolyard in furtherance of the planned drive-by shooting, for the purpose of avenging the murder of fellow Crazy Cats member Smiley. On cross-examination defendant once again admitted that he and Corletto had gone to the schoolyard while armed to "do a drive-by shooting" and avenge fellow gang member Smiley's death.

Defendant was charged with Corletto's murder (Pen. Code, §§ 187, 189)[1] on the theory that his (defendant's) actions provoked the King Boulevard Stoners's, response that killed Corletto. He was also charged with conspiracy to commit murder on the theory that he agreed and conspired with Corletto to murder one or more members of the King Boulevard Stoners by means of a drive-by shooting. Both counts included allegations of firearm use (Pen. Code, § 12022, subd. (a)(1)) and street gang participation (Pen. Code, § 186.22, subd. (b)(1)).

Defendant was convicted of conspiracy to commit murder, and the firearm use allegation was found true. The jury was unable to reach a verdict on the murder charge; that count was ultimately dismissed on the People's motion, as were the street gang enhancements. Defendant was sentenced to a term of 25 years to life, with an additional 1-year term for the firearm use finding. On appeal, he urged that the trial court erred in failing to require the jury to determine the degree of the murder alleged as the target offense of the charged conspiracy. The Court of Appeal rejected the claim and affirmed the judgment. We granted review to determine whether the crime of conspiracy to commit murder is divisible into degrees with differing punishments, or whether all conspiracies to commit murder are conspiracies to commit first degree murder as a matter of law.

## DISCUSSION

### I.

In *Swain, supra,* 12 Cal.4th at page 603, we held that the crime of conspiracy to commit murder requires a finding of unlawful intent to kill, i.e., express malice, and that conspiracy to commit murder cannot be based

[1]The provision of Penal Code section 189, making all murders "perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death" murders of the first degree, was added after commission of the crimes in this case (see Stats. 1993, ch. 611, § 4.5) and thus does not apply herein.

on the underlying criminal objective or target offense of second degree *implied malice* murder. ■ We explained that conspiracy is an inchoate crime that does not require the commission of the substantive target offense that is the object of the conspiracy (*id.* at p. 599; see *People* v. *Manson* (1977) 71 Cal.App.3d 1, 47 [139 Cal.Rptr. 275]), and that " '[a]s an inchoate crime, conspiracy fixes the point of legal intervention at [the time of] agreement to commit a crime,' and 'thus reaches further back into preparatory conduct than attempt . . . .' (Model Pen. Code & Commentaries (1985) com. 1 to § 5.03, pp. 387-388.)" (*Swain, supra,* 12 Cal.4th at p. 600.) We further explained that, as regards the target offense of murder, unlawful intent to kill is the functional equivalent of express malice. (*Id.* at p. 601; see *People* v. *Saille* (1991) 54 Cal.3d 1103, 1114 [2 Cal.Rptr.2d 364, 820 P.2d 588].) ■ We went on to observe that, "conspiracy is a specific intent crime requiring an intent to agree or conspire, and a further intent to commit the target crime, here murder, the object of the conspiracy. Since murder committed with intent to kill is the functional equivalent of *express malice* murder, conceptually speaking, no conflict arises between the specific intent element of conspiracy and the specific intent requirement for such category of murders. Simply put, where the conspirators agree or conspire with specific intent to kill and commit an overt act in furtherance of such agreement, they are guilty of conspiracy to commit express malice murder." (*Swain, supra,* 12 Cal.4th at p. 602, original italics.)

*Swain* explains that the same reasoning cannot obtain where the underlying objective of the conspiracy is second degree implied malice murder. ■ "*Implied malice* murder, in contrast to express malice, requires instead an intent to do some act, the natural consequences of which are dangerous to human life. '*When the killing is the direct result of such an act,*' the requisite mental state for murder—malice aforethought—is implied. (CALJIC No. 8.31, italics added.) In such circumstances, '. . . it is not necessary to establish that the defendant intended that his act would result in the death of a human being.' (*Ibid.*) Hence, under an *implied malice* theory of second degree murder, the requisite mental state for murder—malice aforethought—is by definition 'implied,' as a matter of law, from the specific intent to do some act dangerous to human life *together with the circumstance that a killing has resulted from the doing of such act.*" (*Swain, supra,* 12 Cal.4th at pp. 602-603, original italics.) "It is precisely due to this nature of *implied malice* murder that it would be *illogical* to conclude one can be found guilty of conspiring to commit murder where the requisite element of malice is implied. Such a construction would be at odds with the very nature of the crime of conspiracy—an 'inchoate' crime that 'fixes the point of legal intervention at [the time of] agreement to commit a crime' . . . [citation]— precisely because commission of the crime could never be established, or

deemed complete, unless and until a killing actually occurred." (*Swain, supra,* 12 Cal.4th at p. 603, original italics.)

In light of our unanimous conclusion in *Swain* that conviction of conspiracy to commit murder requires a finding of intent to kill and cannot be based on a theory of implied malice murder, and because the trial court had instructed the jury on theories of both express and implied malice and the jury had returned general verdicts, the defendants' convictions of conspiracy to commit murder had to be reversed, and the issue of proper punishment for such convictions was therefore no longer in controversy and was moot. (*Swain, supra,* 12 Cal.4th at p. 610.) ▮ Accordingly, the *Swain* majority left open the "conceptually difficult question[] . . . regarding whether there exists a viable offense of conspiracy to commit express malice 'second degree' murder, and if there be such an offense, what is the applicable punishment." (*Id.* at pp. 608, 610.)[2] The issue is now ripe for decision in this case.

The conflict surrounding the nature of the crime of conspiracy to commit murder, and the appropriate punishment therefor, is directly traceable to two early decisions of this court—*People* v. *Kynette* (1940) 15 Cal.2d 731 [104 P.2d 794] (*Kynette*), overruled on another point in *People* v. *Snyder* (1958) 50 Cal.2d 190, 197 [324 P.2d 1], and *People* v. *Horn* (1974) 12 Cal.3d 290 [115 Cal.Rptr. 516, 524 P.2d 1300] (*Horn*)—and the interplay between those two decisions and the provisions of Penal Code section 182 that make it unlawful for "(a) . . . two or more persons [to] conspire: [¶] (1) [t]o commit any crime" and establish the punishment for all forms of conspiracy, including conspiracy to commit murder.

When *Kynette* was decided over 50 years ago, Penal Code section 182 provided that a conspiracy was "punishable in the same manner and to the

[2]In a separate concurring opinion, Justice Mosk indicated he would have reached and decided the issue in *Swain,* and set forth an analysis, largely consistent with that we apply herein, concluding the crime of conspiracy to commit murder is a unitary crime that is not divided into degrees and is punishable in every instance with "the punishment for the crime of murder of the first degree . . . ." (*Swain, supra,* 12 Cal.4th at p. 619 (conc. opn. of Mosk, J.); see *id.* at pp. 611-620.)

Justice Kennard, in a separate concurring opinion, likewise indicating she would have reached and decided the issue in *Swain,* went on to set forth the reasons for her conclusion that "conspiracy to commit first degree murder and conspiracy to commit second degree murder are separate crimes distinguished by whether the intent to kill reflected in the conspirators' agreement is deliberate and premeditated or not," and that "under the Penal Code, each type of conspiracy to murder is subject to the punishment prescribed for the corresponding degree of murder." (12 Cal.4th at p. 621 (conc. opn. of Kennard, J.); see *id.* at pp. 622-628.) Justice Kennard's dissent in the present case largely reiterates the rationale of her dissent in *Swain.* (See dis. opn. of Kennard, J., *post,* at pp. 1242-1246, and *passim.*)

same extent as in this code provided for the punishment of the commission of the said felony." (Pen. Code, § 182, as amended by Stats. 1919, ch. 125, § 1, p. 170; *Kynette, supra,* 15 Cal.2d at p. 744.) Defendant Kynette, the acting captain in charge of the Special Intelligence Unit of the Los Angeles Police Department, had been implicated with others in a conspiracy to kill one Harry Raymond. Raymond was involved in the appointment and subsequent resignation of Los Angeles Police Commissioner Harry Munson, and was believed to possess certain damning information regarding Munson's financial dealings that would " 'put the heat' on the administration and 'blow the lid off the city hall.' " (*Kynette, supra,* 15 Cal.2d at p. 739.) After Kynette's special unit began surveillance of Raymond, the latter was nearly killed by a bomb which exploded when he attempted to start his car. Evidence pointed to Kynette and his fellow officers as the responsible parties, and they were charged with a variety of crimes including conspiracy to commit murder which, at the time, was alternatively punishable by death. (*Id.* at pp. 739-744.)

On appeal, Kynette urged that the trial court had erred in excusing certain potential jurors who could not, as a matter of conscience, vote for the death penalty. The argument was based on the assertion that because there were no degrees of conspiracy, the jury was powerless to determine the degree of the target murder and was therefore equally powerless to impose the death penalty. (*Kynette, supra,* 15 Cal.2d at p. 744.) In rejecting the contention, this court expressly held that "a conspiracy to commit murder can only be a conspiracy to commit murder of the first degree for the obvious reason that the agreement to murder *necessarily involves the 'willful, deliberate and premeditated' intention to kill a human being.* A murder committed in pursuance of such an agreement would *unquestionably be a 'willful, deliberate and premeditated' murder of the first degree* and punishable by death or life imprisonment." (*Kynette, supra,* 15 Cal.2d at p. 745, italics added.)

In his separate concurring opinion in *Swain,* Justice Mosk observed: "In *Kynette,* we thereby impliedly held that the crime of conspiracy to commit murder is properly conspiracy to commit murder *simpliciter.* Under its reasoning, it is erroneous to speak of a 'crime' of 'conspiracy to commit murder *of the second degree*': 'a conspiracy to commit murder can only be a conspiracy to commit murder of the first degree' (*People v. Kynette, supra,* 15 Cal.2d at p. 745). Similarly, it is unnecessary to label the crime 'conspiracy to commit murder *of the first degree*': there is no crime of 'conspiracy to commit murder *of the second—or any other—degree*' from which it may be distinguished." (*Swain, supra,* 12 Cal.4th at pp. 613-614, original italics (conc. opn. of Mosk, J.).)

*Kynette*'s conclusion that all conspiracy to commit murder is necessarily conspiracy to commit murder of the first degree was, and remains, a sound

one because the current statutory definition of premeditation is akin to the definition of premeditation in effect when this court decided *Kynette, supra,* 15 Cal.2d 731, namely, mere " 'advanced planning of the crime.' " (*Swain, supra,* 12 Cal.4th at p. 608.)

As noted, conspiracy is a specific intent crime requiring both an intent to agree or conspire and a further intent to commit the target crime or object of the conspiracy. (*Swain, supra,* 12 Cal.4th at p. 602.) Murder that is premeditated and deliberated is murder of the first degree. " '[P]remeditated' means 'considered beforehand,' and 'deliberate' means 'formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.' (CALJIC No. 8.20 (5th ed. 1988), quoted with approval in *People* v. *Perez* (1992) 2 Cal.4th 1117, 1123 [9 Cal.Rptr.2d 577, 831 P.2d 1159].) The process of premeditation and deliberation does not require any extended period of time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .' (*People* v. *Thomas* (1945) 25 Cal.2d 880, 900 [156 P.2d 7]; accord, *People* v. *Perez, supra,* 2 Cal.4th at p. 1127.)" (*People* v. *Mayfield* (1997) 14 Cal.4th 668, 767 [60 Cal.Rptr.2d 1, 928 P.2d 485]; see also *People* v. *Stanley* (1995) 10 Cal.4th 764, 795 [42 Cal.Rptr.2d 543, 897 P.2d 481].)

Consequently, it logically follows that where two or more persons conspire to commit murder—i.e., intend to agree or conspire, further intend to commit the target offense of murder, and perform one or more overt acts in furtherance of the planned murder—each has acted with a state of mind "functionally indistinguishable from the mental state of premeditating the target offense of murder." (*Swain, supra,* 12 Cal.4th at pp. 608-609.) The mental state required for conviction of *conspiracy* to commit murder necessarily establishes premeditation and deliberation of the target offense of murder—hence all murder conspiracies are conspiracies to commit first degree murder, so to speak. More accurately stated, conspiracy to commit murder is a unitary offense *punishable* in every instance in the same manner as is first degree murder under the provisions of Penal Code section 182. (*Swain, supra,* 12 Cal.4th at p. 609.)[3]

In his separate concurring opinion in *Swain,* Justice Mosk elucidated the point further: "[Conspiracy to commit murder] does not require, as a factual

[3]With due respect, we believe Justice Kennard misconstrues our analysis when suggesting we are concluding "conspiracy to murder is a unitary crime requiring proof of only intent to kill, the mental state of second degree murder, but subject to the punishment for first degree murder." (Dis. opn. of Kennard, J., *post,* at p. 1247.) We are not concluding conspiracy to commit murder "requir[es] only intent to kill"—we are instead merely recognizing that the mental state required for conviction of conspiracy to commit express malice murder *necessarily equates with and establishes* the mental state of deliberate and premeditated first degree

matter, a *premeditated and deliberate* intent to kill unlawfully. But an intent of such character is present in the context of a conspiracy, practically by definition, because it does not arise of a sudden within a single person but is necessarily formed and then shared by at least two persons. (Cf. *People* v. *Ruiz* (1988) 44 Cal.3d 589, 614 [244 Cal.Rptr. 200, 749 P.2d 854] [concluding that murder by lying in wait is, by definition, a kind of 'willful, deliberate, and premeditated killing' within the meaning of Penal Code section 189, and does not require as a factual matter a premeditated and deliberate intent to kill unlawfully or even a simple intent to kill unlawfully].)" (*Swain, supra,* 12 Cal.4th at p. 613, original italics (conc. opn. of Mosk, J.).)

Fifteen years after *Kynette* was decided, the Legislature amended the punishment language of Penal Code section 182 to provide as follows: "If the felony is one for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony defendant conspired to commit. If the degree is not so determined, the punishment for conspiracy to commit such felony shall be that prescribed for the lesser degree, except in the case of conspiracy to commit murder, in which case the punishment shall be that prescribed for murder in the first degree." (Pen. Code, § 182, as amended by Stats. 1955, ch. 660, § 1, p. 1155.) The punishment language of Penal Code section 182 remains substantially the same today.

Twenty years after the Legislature amended the punishment provisions of Penal Code section 182, we decided *Horn, supra,* 12 Cal.3d 290, and in dicta addressed the effect of those amendments on the punishment for conspiracy to commit murder. In *Horn* we concluded such conspiracies *could* take the form of conspiracy to commit first degree murder, conspiracy to commit second degree murder, and conspiracy to commit manslaughter. (*Id.* at pp.

---

murder. As this court concluded over half a century ago in *Kynette, supra,* 15 Cal.2d 731, it is inconceivable that two persons can harbor the mental state required to conspire to commit express malice murder, and, we might add, additionally commit an overt act or acts in furtherance thereof as required for conviction of the crime of conspiracy, without being deemed to have willfully "premeditated and deliberated" the commission of that murder. As explained below, the Legislature patently recognized as much when it amended Penal Code section 182 after *Kynette* was decided (Stats. 1955, ch. 660, § 1, p. 1155) to expressly require that all conspiracies to commit murder are punishable in the same manner as murder in the first degree. Justice Kennard likewise misses the mark in suggesting we have "unconstitutionally removed" the requirement of proof of the requisite mental state or mental element of conspiracy to commit murder. (Dis. opn. of Kennard, J., *post,* at p. 1248.) When a jury finds the existence of a conspiracy to commit express malice murder it has thereby necessarily determined that the conspirators premeditated and deliberated the commission of said murder. It is the Legislature, not this court, that in so recognizing has seen fit to provide that all such conspiracies shall be punished as conspiracies to commit murder in the first degree. (Pen. Code, § 182.)

298-300 & fn. 5.) In so concluding, we gave three reasons why, contrary to our earlier holding in *Kynette*, all conspiracies to commit murder were not necessarily conspiracy to commit murder in the first degree: (1) the then existing availability of the diminished capacity defense; (2) the then existing requirement that in order to establish the requisite element of premeditation for first degree murder, defendant be shown to have " 'maturely and meaningfully reflect[ed] [on] the gravity of his contemplated act' " (*id.* at p. 298, citing *People* v. *Wolff* (1964) 61 Cal.2d 795, 821 [40 Cal.Rptr. 271, 394 P.2d 959], italics omitted); and (3) the above noted post-*Kynette* amendments to Penal Code section 182 altering the punishment for murder conspiracies. (*Horn, supra,* 12 Cal.3d at pp. 298-300, & fn. 5.) *Horn* expressly disapproved *Kynette* to the extent it was inconsistent. (*Horn, supra,* 12 Cal.3d at p. 301, fn. 8.)[4]

As *Swain* explains, two of the three reasons given in *Horn* in support of the conclusion that conspiracies to commit murder are divisible into degrees and subject to differing punishments are no longer the law.

"First, the characterization of premeditation upon which *Horn, supra,* 12 Cal.3d 290, relied, namely, a showing that the defendant was able to ' "*maturely and meaningfully reflect upon the gravity of his contemplated act*" ' (*Horn, supra,* 12 Cal.3d at p. 298, italics added, quoting *People* v. *Wolff* (1964) 61 Cal.2d 795, 821 [40 Cal.Rptr. 271, 394 P.2d 959]), has itself passed into history. Seven years after *Horn* was decided, the Legislature amended Penal Code section 189 to provide that 'To prove the killing was "deliberate and premeditated," *it shall not be necessary to prove the defendant maturely and meaningfully reflected upon the gravity of his or her act.*' (Stats. 1981, ch. 404, § 7, p. 1593, italics added.)"

"Second, since *Horn, supra,* 12 Cal.3d 290, was decided, the Legislature has abolished the defense of diminished capacity. (See Stats. 1981, ch. 404, § 4, p. 1592 [enacting Pen. Code, § 28].) As one court has observed: '*Horn,* decided in 1974, was premised largely on the continued existence of the diminished capacity defense. In light of the subsequent legislative abrogation of that defense, we question the continued validity of *Horn* . . . .' (*People* v. *Miller* (1992) 6 Cal.App.4th 873, 878, fn. 2 [8 Cal.Rptr.2d 193].)" (*Swain, supra,* 12 Cal.4th at p. 608.)

---

[4]We were careful to point out in *Swain* that the entire discussion in *Horn* regarding the viability of the offense of conspiracy to commit *second degree* express malice murder was dictum. The objective of the charged conspiracy in *Horn* was murder by means of a firebomb, and because Penal Code section 189, as it then read, provided that all murder perpetrated by means of a bomb was murder of the first degree, the charged conspiracy in *Horn* was conspiracy to commit first degree murder regardless of whether the facts established premeditation and deliberation. (*Swain, supra,* 12 Cal.4th at pp. 606-607; *Horn, supra,* 12 Cal.3d at pp. 299-300.)

As a result of the Legislature's abrogation of the "mature and meaningful reflection" requirement for establishing premediation, and its abolishment of the diminished capacity defense, there remains only the *Horn* court's interpretation of the provisions of Penal Code section 182 as arguable support for its conclusion that conspiracy to commit murder is divisible into degrees, and that "conspiracy to commit second degree murder" is a viable offense. As next explained, such a strained interpretation of the punishment provisions of Penal Code section 182 leads to illogical results and cannot within reason serve as grounds for salvaging the holding of *Horn*.

Much of the confusion engendered by *Horn* stems from its interpretation of the provisions of Penal Code section 182. Although those provisions, by their express terms, purport only to prescribe the proper *punishment* for conspiracy convictions, they were construed in *Horn, supra,* 12 Cal.3d at page 298, footnote 5, as creating or authorizing conviction of the offense of "conspiracy to commit second degree murder." The controversial footnote in *Horn* states: "*Kynette's* assertion that a conspiracy to commit murder is always a conspiracy to commit first degree murder is inconsistent with the present language of Penal Code section 182. When *Kynette* was decided, section 182 provided simply that conspirators to commit a felony 'shall be punishable in the same manner and to the same extent as provided for the punishment of the commission of the said felony.' The current section 182, enacted in 1955, is much more specific: 'If the felony is one for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony defendant conspired to commit. If the degree is not so determined, the punishment for conspiracy to commit such felony shall be that prescribed for the lesser degree, *except in the case of conspiracy to commit murder, in which case the punishment shall be that prescribed for murder in the first degree.*' [¶] As this language is written and punctuated, it plainly authorizes the trier of fact to return a verdict finding conspiracy to commit murder in the second degree. *Only* if the trier of fact fails to determine the degree is a conspiracy to commit murder punished as one to commit first degree murder. Since the Legislature has authorized a verdict of conspiracy to commit second degree murder, it clearly does not believe that crime to be a logical impossibility." (*Ibid.,* first italics added, second italics original.)

As we observed in *Swain, supra,* 12 Cal.4th at pages 609-610, the point made in the *Horn* footnote can be refuted "by concluding that the portion of Penal Code section 182 quoted in italics above was added by the Legislature for the very purpose of effectuating this court's holding in *Kynette, supra,* 15 Cal.2d 731, that is to say, by expressly providing that all conspiracy to commit murder is conspiracy to commit murder *in the first degree,* and that

hence all such conspiracies should be punished as first degree murders, with no consequent requirement that the jury further determine the degree of the target offense of murder. The *Horn* court's contrary interpretation—that '[*o*]*nly* if the trier of fact fails to determine the degree is a conspiracy to commit murder punished as one to commit first degree murder . . .' (*Horn, supra,* 12 Cal.3d at p. 298, fn. 5)—does seem at odds with the general proposition, embodied in Penal Code section 182, that a defendant should receive the benefit of a jury's failure to designate the degree of the target offense of the conspiracy." (Original italics.)[5]

Although it might be countered that the relevant punishment provisions of Penal Code section 182 quoted above, as suggested by the court in *Horn, supra,* 12 Cal.3d at page 298, footnote 5, can literally be read as contemplating verdicts of "conspiracy to commit second degree murder,"[6] the plain fact remains that *Horn*'s interpretation of Penal Code section 182 was dictum because "the provisions of Penal Code section 182 are expressly addressed to the proper *punishment* for conspiracy, including conspiracy to commit murder. Punishment was simply not at issue in *Horn, supra,* 12 Cal.3d 290. ■ ' "It is the general rule that the language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts." ' (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 734-735 [257 Cal.Rptr. 708, 771 P.2d 406], quoting *River Farms Co.* v. *Superior Court* (1933) 131 Cal.App. 365, 369 [21 P.2d 643]; accord, *Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 1003-1004 [275 Cal.Rptr. 201, 800 P.2d 557].)" (*Swain, supra,* 12 Cal.4th at p. 610.)

In *People* v. *Bright* (1996) 12 Cal.4th 652 [49 Cal.Rptr.2d 732, 909 P.2d 1354] (*Bright*), we had occasion to interpret a legislative amendment of a statutory punishment provision similar to the 1955 amendment of Penal

[5]Notably, the definition of "premeditation" existing at the time Penal Code section 182 was amended in 1955 was the same as that in effect when *Kynette* was decided. The requirement that the defendant "maturely and meaningfully reflect upon the gravity of his contemplated act" was not made the "true test" of premeditation until nine years after Penal Code section 182 was amended to include the punishment language pertaining to murder conspiracies here concerned. (See *People* v. *Wolff, supra,* 61 Cal.2d at p. 821.) Hence, the Legislature could not have had that requirement in mind when it amended Penal Code section 182, lending further support to our conclusion that the amendment of that statute in 1955 was not intended to authorize the substantive offense of conspiracy to commit second degree express malice murder, and was intended instead to codify our holding in *Kynette* by acknowledging that all murder conspiracies are the functional equivalent of conspiracy to commit premeditated first degree murder, and providing that all such conspiracies shall be punished in the same manner as the offense of murder in the first degree.

[6]Justice Kennard took this position in her separate concurring opinion in *Swain, supra,* 12 Cal.4th at page 624 (conc. opn. of Kennard, J.), and incorporates it in her dissent in this case. (Dis. opn. of Kennard, J., *post,* at p. 1249.)

Code section 182 here in question. *Bright* construed a 1986 amendment to Penal Code section 664—the statute governing the punishment for attempts—which prescribed greater punishment for attempted murders that were willful, deliberate and premeditated. The relevant punishment language of Penal Code section 664, as amended in 1986, provided as follows: "If the offense so attempted is punishable by imprisonment in the state prison, the person guilty of such attempt is punishable by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense so attempted; provided, however, that if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punishable by imprisonment in the state prison for life with the possibility of parole. . . ." (Stats. 1986, ch. 519, § 2, p. 1859.) Prior to the 1986 amendment, it was generally recognized that the crime of attempted murder was not divided into degrees. (*Bright, supra,* 12 Cal.4th at p. 665; see also *People* v. *Miller* (1992) 6 Cal.App.4th 873 [8 Cal.Rptr.2d 193].)

*Bright* addressed the question of whether the 1986 amendment to Penal Code section 664 specifically recognized the crime of attempted *first degree* murder, thus dividing attempted murder into degrees, or whether the amendment merely constituted a penalty provision. (*Bright, supra,* 12 Cal.4th at pp. 665-666.) In concluding the amendment spoke to punishment alone, we observed that had the Legislature intended to modify the generally recognized rule that attempted murder was not divisible into degrees, it would have explicitly done so. We further observed we were "unaware of any California penal provision creating degrees of an offense by implication." (*Id.* at p. 668.)

Moreover, reading the punishment provisions of Penal Code section 182 as establishing the substantive offense of conspiracy to commit *second degree* express malice murder would lead to illogical results. One such anomaly has already been noted: The *Horn* court's interpretation of Penal Code section 182 as requiring that "[o]nly if the trier of fact fails to determine the degree is a conspiracy to commit murder punished as one to commit first degree murder. . . ." (*Horn, supra,* 12 Cal.3d at p. 298, fn. 5, italics omitted) is at odds with the general proposition, expressly embodied in the punishment language of Penal Code section 182, that a defendant should receive the *benefit* of a jury's failure to designate the degree of the target offense of the conspiracy. (*Ante,* at p. 1235; *Swain, supra,* 12 Cal.4th at pp. 609-610; see also Pen. Code, §§ 1157, 1192.)[7]

We therefore conclude all conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder, and that all murder conspiracies are punishable in the same manner as

---

[7]In her separate concurring opinion in *Swain,* Justice Kennard offered the following responsive analysis: "There is . . . a logical reason why, when the trier of fact fails to

murder in the first degree pursuant to the punishment provisions of Penal Code section 182. The time has come to disapprove our early decision in *Horn, supra,* 12 Cal.3d 290, to the extent it is inconsistent with the views expressed herein.

## II.

██ Our order granting review additionally asked the parties to address the related question of whether the trial court below erred in failing to instruct the jury on premeditation and deliberation with regard to the con- · spiracy count. Given our conclusion that conspiracy to commit murder is a unitary offense punishable in every instance with the penalty prescribed for first degree murder, it follows logically that there was no occasion or requirement for the jury to determine the "degree" of the underlying target offense of murder, and thus no need for specific instruction on premeditation and deliberation respecting the conspiracy count. Our conclusion in this case—that a jury's finding of the dual specific intent required for conviction of conspiracy to murder necessarily establishes that the target offense of murder was premeditated and deliberated, and that the Legislature in Penal Code section 182 has recognized as much by providing that punishment for all conspiracies to murder is that prescribed for first degree murder—does not itself furnish a basis for requiring that juries henceforth be instructed on the definition of premeditation and deliberation in all murder conspiracy cases.

Although the jury was properly not asked to determine the *degree* of the target murder (or, for that matter, whether the target offense was actually

---

determine the degree of the crime, murder conspiracies are punished in the first degree while conspiracies to commit all other crimes are punished in the lesser degree. Deliberate and premeditated murders are murders of the first degree. As *Kynette* recognized, in the typical murder conspiracy the conspirators will act with premeditation and deliberation in forming an agreement to commit the crime. (*Kynette, supra,* 15 Cal.2d at p. 745.) Punishing murder conspiracies of unspecified degree as first degree murder conspiracies simply accords with the statistical reality that the vast majority of murder conspiracies will involve premeditation and deliberation." (*Swain, supra,* 12 Cal.4th at p. 627 (conc. opn. of Kennard, J.).) Once again, Justice Kennard reiterates this point in her dissent in the instant case. (Dis. opn. of Kennard, J., *post*, at p. 1250.)

Justice Kennard also acknowledged that even under her interpretation of Penal Code section 182, "as a factual matter the crime of conspiracy to commit second degree express-malice murder applies only to a narrow range of cases—those in which conspirators formed an agreement to kill but made that agreement without deliberation and premeditation. It seems doubtful that any agreement persisting beyond more than the briefest duration would lack deliberation and premeditation, for inevitably the passage of time alone would cause the agreement to become deliberate and premeditated." (*Swain, supra,* 12 Cal.4th at p. 625 (conc. opn. of Kennard, J.).) The same acknowledgement is retained in Justice Kennard's dissent in this case, wherein she acknowledges that "most conspiracies" are of a "deliberate and premeditated nature . . . ." (Dis. opn. of Kennard, J., *post*, at p. 1250.)

committed, since in many conspiracy cases, as here, the target offense will not have been committed or completed), and instructions on premeditation and deliberation were therefore not required, instructions defining the essential elements of murder were required because defendant was charged with conspiring with his deceased accomplice Corletto to commit the underlying criminal objective or target offense of murder *simpliciter*. "[C]onspiracy is a specific intent crime requiring an intent to agree or conspire, and a further intent to commit the target crime, here murder, the object of the conspiracy." (*Swain, supra,* 12 Cal.4th at p. 602.) Instructions on the basic elements of murder were therefore necessary to guide the jury in its determination of whether defendant harbored the requisite dual specific intent for conviction of conspiracy to commit murder.

The necessary instructions were given in this case. The jury was instructed that murder is "the unlawful killing of a human being . . . with malice aforethought," and malice aforethought was further specifically defined as intent to kill. These instructions were sufficient to define the elements of the target offense of murder *simpliciter* in connection with the charged conspiracy. We note that these instructions were delivered to the jury in a rather circuitous fashion; the Court of Appeal's opinion explains at some length how they were embodied in attempted murder instructions, which in turn were given in connection with the "provocative act" theory of murder (see *In re Joe R.* (1980) 27 Cal.3d 496, 507-508 [165 Cal.Rptr. 837, 612 P.2d 927]) by which the prosecution sought to convict defendant for *accomplice Corletto's murder* (the jury deadlocked on that charge and a mistrial was declared). The Court of Appeal correctly concluded that, "[w]hile a murder instruction directly tied to the conspiracy charge might have been helpful, we find that the definition of murder included in the attempted murder instruction was sufficient to communicate to the jury the necessity of a finding of specific intent to kill for a conspiracy to commit murder conviction. On a fair reading of the jury instructions, the murder component of the attempted murder instruction operated as a freestanding definition of murder." Nor is this aspect of the Court of Appeal's holding being challenged by petitioner on review in this court.

Finally, in connection with its discussion of the murder instructions described above, the Court of Appeal below made the following observations with regard to the recent decision in *People v. Miller* (1996) 46 Cal.App.4th 412 [53 Cal.Rptr.2d 773] (*Miller*): "We observe that in *People v. Miller* (1996) 46 Cal.App.4th 412 [53 Cal.Rptr.2d 773], a case with superficial similarities to this one, another appellate panel found the following instructional deficiencies to be reversible error in the context of 'conspiracy to commit willful, deliberate and premeditated murder': (1) omission

of the 'with the further specific intent to commit such offense' language from CALJIC No. 6.10 [the basic conspiracy instruction]; and (2) failure to give either a free-standing murder or premeditation and deliberation instruction. In *Miller* the conspiracy appears to have been charged as a 'conspiracy to commit willful, deliberate and premeditated murder,' (46 Cal.App.4th at p. 416) and the trial court appears to have 'expressly limited' certain instructions to certain charges. (*Id.* at p. 426.) That did not happen in the present case."

Given our conclusion that conspiracy to commit murder is a unitary crime punishable in the same manner as first degree murder in every instance, and that, because the jury is not required to determine the "degree" of the target offense of murder, instructions on premeditation and deliberation need not be given, any suggestion in *Miller, supra,* 46 Cal.App.4th at page 426, footnote 6, that such instructions are required in every conspiracy to murder case is unfounded and hereby disapproved.[8]

### CONCLUSION

The judgment of the Court of Appeal is affirmed.

George, C. J., Mosk, J., Werdegar, J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I concur in the opinion of the court.

In my concurring opinion in *People* v. *Swain* (1996) 12 Cal.4th 593 [49 Cal.Rptr.2d 390, 909 P.2d 994], I anticipated, and resolved, the issue presented here.

"[T]he crime of conspiracy to commit murder" is defined "as the agreement by two or more persons, accompanied by an overt act, to effect a killing that is unlawful under the circumstances as they are believed to be and that is reflective of malice aforethought [citation]. So defined, the crime of conspiracy to commit murder requires two kinds of 'intent' strictly so called. One is intent to join together in a common endeavor: else, there is no

---

[8]The *Miller* court suggested certain language in our majority opinion in *Swain* "may be interpreted as meaning that the jury need not be informed of the requirement of the intention to kill nor given the definition of deliberate and premeditated . . . ." (46 Cal.App.4th at p. 426, fn. 6.) We said nothing in *Swain* to suggest that the instructional requirements for the basic elements of the target offense of murder *simpliciter*—i.e., that intent to kill is part and parcel of the specific intent required for conspiracy to commit murder—were being eliminated, nor anything to suggest instruction on premeditation and deliberation had been a requirement where the charge is conspiracy to commit murder *simpliciter*, much less one that was being abrogated.

*conspiracy* to commit murder. The other is intent to kill unlawfully: else, there is no conspiracy to commit *murder*. The offense does not require, as a factual matter, a *premeditated and deliberate* intent to kill unlawfully. But an intent of such character is present in the context of a conspiracy, practically by definition, because it does not arise of a sudden within a single person but is necessarily formed and then shared by at least two persons." (*People* v. *Swain, supra,* 12 Cal.4th at pp. 612-613, original italics & fn. omitted (conc. opn. of Mosk, J.).)

Because this is so, we were right to expressly hold in *People* v. *Kynette* (1940) 15 Cal.2d 731 [104 P.2d 794], notwithstanding its disapproval by *People* v. *Horn* (1974) 12 Cal.3d 290 [115 Cal.Rptr. 516, 524 P.2d 1300], which we here disapprove today, that " 'a conspiracy to commit murder can only be a conspiracy to commit murder of the first degree for the obvious reason that the agreement to murder necessarily involves the "willful, deliberate and premeditated" intention to kill a human being.' [Citation.] Inasmuch as it encompasses malice aforethought, in fact *express* malice aforethought, such an 'intention' distinguishes murder from other homicide. Also, by its very terms, it differentiates murder of the first degree in one of its forms from murder of the second degree." (*People* v. *Swain, supra,* 12 Cal.4th at p. 613, original italics (conc. opn. of Mosk, J.), quoting *People* v. *Kynette, supra,* 15 Cal.2d at p. 745.)

We were also right to impliedly hold in *Kynette*, again notwithstanding its disapproval by *Horn*, that the "crime of conspiracy to commit murder is properly conspiracy to commit murder *simpliciter*. Under its reasoning, it is erroneous to speak of a 'crime' of 'conspiracy to commit murder *of the second degree*': 'a conspiracy to commit murder can only be a conspiracy to commit murder of the first degree' [citation]. Similarly, it is unnecessary to label the crime 'conspiracy to commit murder *of the first degree*': there is no crime of 'conspiracy to commit murder *of the second—or any other—degree*' from which it may be distinguished." (*People* v. *Swain, supra,* 12 Cal.4th at pp. 613-614, original italics (conc. opn. of Mosk, J.), quoting *People* v. *Kynette, supra,* 15 Cal.2d at p. 745.)

Because I read the opinion of the court to resolve the issue presented here consistently with my resolution of the same issue in *Swain*, I join in its reasoning and result.

**KENNARD, J.,** Dissenting.—A conspiracy is an agreement by two or more persons to commit a crime. The crime of murder is divided into first degree murder and second degree murder. When two or more persons form a conspiracy to commit a crime divided into degrees, conspiracy law generally

provides that conspiracy to commit that crime is also divided into degrees, and that the conspirators are liable for conspiracy to commit a given degree of the crime only if they possess the mental state and intend to'.commit the acts required by that degree of the crime. Conspiracy law also generally provides that the conspirators' possible punishment is determined by the degree of the crime whose elements they have intended to commit.

This case poses the question of whether these general principles of conspiracy law hold true for murder conspiracies as well. The majority holds they do not, concluding that there is but a single crime of conspiracy to murder, requiring only the mental state of second degree murder (intent to kill) yet subject to the penalty for first degree murder (which requires as its mental state premeditation and deliberation in addition to intent to kill).

In *People* v. *Swain* (1996) 12 Cal.4th 593 [49 Cal.Rptr.2d 390, 909 P.2d 994] (hereafter *Swain*), I wrote a separate opinion explaining my conclusion that in Penal Code section 182 the Legislature has created separate crimes of conspiracy to commit first degree murder (requiring proof of premeditation and deliberation) and conspiracy to commit second degree murder (requiring only intent to kill), with separate punishments for each. Section 182 sets forth the general rule that conspiracies are divided into degrees with the punishment determined by the degree of the target crime ("[i]f the felony is one," like murder, "for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony defendant conspired to commit"). Section 182 also provides that if the trier of fact *fails* to determine the degree of a murder conspiracy, the punishment is that for first degree murder ("[i]f the degree is not so determined, the punishment . . . in the case of conspiracy to commit murder . . . shall be that prescribed for murder in the first degree").

In my view, the conclusion that conspiracy to murder is divided into degrees remains the correct one, and accordingly I dissent.

## I

Defendant was the driver of a car involved in a gang drive-by shooting. His passenger shot at, but did not kill, members of a rival gang. Defendant was charged with conspiracy to commit murder. The jury was instructed only on the elements of second degree murder. It was never instructed on the additional elements of first degree murder. It was never instructed to determine the degree of murder that defendant conspired to commit. The jury convicted defendant, and he was sentenced to 25 years to life in prison, the

punishment prescribed for first degree murder. The Court of Appeal rejected defendant's claim that in light of the jury instructions he could be convicted only of conspiracy to commit second degree murder and could receive only 15 years to life in prison, the punishment authorized for second degree murder.

In *Swain, supra*, 12 Cal.4th 593, I gave this explanation of my conclusion that the Legislature has divided conspiracy to commit murder into degrees with separate punishments for each degree:

"Penal Code section 182 (hereafter section 182) makes it unlawful for '(a) . . . two or more persons [to] conspire: [¶] (1) [t]o commit any crime' and establishes the punishment for conspiracies, including murder conspiracies. For crimes divided according to degree, section 182 provides for the following punishment: 'If the felony is one for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony defendant conspired to commit. If the degree is not so determined, the punishment for conspiracy to commit the felony shall be that prescribed for the lesser degree, except in the case of conspiracy to commit murder, in which case the punishment shall be that prescribed for murder in the first degree.' I shall refer to this as the punishment language of section 182.

"The crime of murder is divided into degrees. At the time the murder at issue in this case occurred, Penal Code section 189 defined first degree murder as (1) 'any . . . kind of willful, deliberate, and premeditated killing' (including killings accomplished by any of a variety of statutorily designated methods, the use of which in effect establishes deliberation and premeditation as a matter of law) or (2) murders 'committed in the perpetration of, or attempt to perpetrate,' certain designated felonies (commonly referred to as felony murder). 'All other kinds of murders are of the second degree.' (Pen. Code, § 189.) First and second degree murder have different punishments. (Pen. Code, § 190.) Because murder is a crime 'for which different punishments are prescribed for different degrees' (§ 182), the punishment language of section 182 on its face divides murder conspiracies into degrees, just as it does other crimes for which different punishments are prescribed for different degrees.

"To understand the debate over whether the current version of section 182 divides conspiracy to murder into degrees, however, it is necessary to begin with *People* v. *Kynette* (1940) 15 Cal.2d 731 [104 P.2d 794] (hereafter *Kynette*), which was decided when a different version of section 182 was in effect. At that time, section 182 provided that a conspiracy was 'punishable

in the same manner and to the same extent as in this code provided for the punishment of the commission of the said felony.' (Former § 182, as amended by Stats. 1919, ch. 125, § 1, p. 170; *Kynette, supra*, 15 Cal.2d at p. 744.) The defendant in *Kynette* argued that the trial court improperly excluded jurors with reservations against the death penalty because, he contended, the death penalty (a possible penalty for first degree murder) was not a possible punishment for conspiracy to commit murder. (*Id.* at p. 744.) Thus, the issue was whether the penalty for first degree murder was a possible penalty for a conspiracy to commit murder.

"In *Kynette*, this court held that the death penalty was a possible punishment for conspiracy to commit murder. (*Kynette, supra*, 15 Cal.2d at p. 745.) It reasoned that all conspiracies to commit murder were necessarily conspiracies to commit first degree murder. (*Ibid.*)

"In 1955, 15 years after *Kynette, supra*, 15 Cal.2d 731, the Legislature changed the punishment language of section 182 to provide as follows: 'If the felony is one for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony defendant conspired to commit. If the degree is not so determined, the punishment for conspiracy to commit such felony shall be that prescribed for the lesser degree, except in the case of conspiracy to commit murder, in which case the punishment shall be that prescribed for murder in the first degree.' (§ 182, as amended by Stats. 1955, ch. 660, § 1, p. 1155.) The punishment language of section 182 remains substantially the same today.

"Almost 20 years after the Legislature altered section 182, this court addressed the effect of those changes on conspiracy to commit murder in *People* v. *Horn* [(1974)] 12 Cal.3d 290 [115 Cal.Rptr. 516, 524 P.2d 1300] (hereafter *Horn*). In that case, the court concluded that conspiracies to kill could take the form of conspiracies to commit first degree murder, conspiracies to commit second degree murder, and conspiracies to commit manslaughter. (*Id.* at pp. 298-300 & fn. 5.) In doing so, the court relied on three reasons: the existence of the diminished capacity defense; the then-existing requirement that for premeditation to exist the defendant must have 'maturely and meaningfully reflect[ed] [on] the gravity of his contemplated act' (*People* v. *Wolff* (1964) 61 Cal.2d 795, 821 [40 Cal.Rptr. 271, 394 P.2d 959], italics omitted); and the post-*Kynette* changes to the punishment for murder conspiracies set forth in section 182. (*Horn, supra*, 12 Cal.3d at pp. 298-300 & fn. 5.) The court disapproved *Kynette* to the extent it was inconsistent. (*Horn, supra*, 12 Cal.3d at p. 301, fn. 8.)

"As the majority notes, the first two reasons set forth in the *Horn* decision (*supra*, 12 Cal.3d 290 [115 Cal.Rptr. 516, 524 P.2d 1300]) supporting the

division of murder conspiracies into degrees—the existence of the diminished capacity defense and the 'mature and meaningful reflection requirement'—are no longer the law. (Maj. opn., *ante*, at p. 608.) There remains, however, the punishment language of section 182.

"The natural reading of the punishment language of section 182 makes conspiracies to murder punishable by degree, just as conspiracies to commit other crimes are punishable by degree. The first sentence of the punishment language of section 182 ('If the felony is one for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony defendant conspired to commit.') requires the trier of fact to ascertain the degree of the crime that is the object of the conspiracy, and thereby impliedly makes the punishment for the conspiracy the punishment for that degree of the crime. The second sentence of the punishment language of section 182 ('If the degree is not so determined, the punishment for conspiracy to commit the felony shall be that prescribed for the lesser degree, except in the case of conspiracy to commit murder, in which case the punishment shall be that prescribed for murder in the first degree.') states that when the degree is not determined, the punishment is to be for the lesser degree *except* in the case of murder, which is punished in the first degree. By its terms, the murder conspiracy exception just referred to is limited to cases in which the jury has not determined the degree; it is not an exception removing murder conspiracies entirely from classification and punishment by degree. Thus, *Horn* correctly concluded that, '[a]s this language is written and punctuated, it plainly authorizes the trier of fact to return a verdict finding conspiracy to commit murder in the second degree.' (*Horn, supra*, 12 Cal.3d at p. 298, fn. 5.) Nor is there any evidence of a contrary legislative intent underlying the enactment of section 182.

"When this analysis of section 182 is coupled with our holding today that conspiracy to murder requires an unlawful intent to kill, the result is that a conspiracy to murder may be either a conspiracy to commit first degree murder or a conspiracy to commit second degree express-malice murder. The degree of the murder conspiracy depends on whether the conspirators' agreement evidences a willful, deliberate, premeditated intent to kill of the type that distinguishes first degree murder or instead reflects only a bare intent to kill lacking in premeditation and deliberation.[1] Reading section 182 as dividing conspiracy to murder into degrees, the punishment for each

---

"[1]For purposes of this discussion, I include within the term 'willful, deliberate and premeditated' the methods of killing designated in Penal Code section 189 that serve to elevate a killing to first degree murder. At the time of this case, those methods were killing 'by means of a destructive device or explosive, knowing use of ammunition designed

degree of conspiracy to commit murder is that for the underlying degree of murder. If the trier of fact fails to determine the degree, the conspiracy is subject to the punishment for first degree murder.

"The reason for this structure of conspiracy to murder is readily apparent. If conspiracy to murder were a unitary crime that required only intent to kill, which is the mental state of second degree murder, but was punished as first degree murder, then conspiracies that involve agreements to commit only the elements of second degree murder (e.g., that lack premeditation and deliberation) would be punished more severely than the completed crime of second degree murder.

"There is an additional reason for adhering to *Horn*'s conclusion that conspiracy to commit murder is divided by degrees. *Horn* has been the law for 21 years. During that time, the Legislature has not amended section 182 to change the understanding of murder conspiracy set forth in *Horn*. Therefore, the prudent and preferable course is to retain *Horn*'s structure of conspiracy to murder as a crime divided into degrees with different punishments for each degree. If the Legislature wishes to alter this structure of conspiracy to murder, it can do so. That significant policy decision, however, should be left to the Legislature.

"Finally, I note that as a factual matter the crime of conspiracy to commit second degree express-malice murder applies only to a narrow range of cases—those in which conspirators formed an agreement to kill but made that agreement without deliberation and premeditation. It seems doubtful that any agreement persisting beyond more than the briefest duration would lack deliberation and premeditation, for inevitably the passage of time alone would cause the agreement to become deliberate and premeditated." (*Swain, supra*, 12 Cal.4th at pp. 622-625 (conc. opn. of Kennard, J.).)

Because the statutory framework governing conspiracy to commit murder has not changed since the time of *Swain, supra*, 12 Cal.4th 593, I adhere to my conclusion there that conspiracy to commit murder is divided into degrees.

---

primarily to penetrate metal or armor, poison, lying in wait, [or] torture.' (*Ibid.*) Moreover, as a practical matter, a conspiracy to kill by one of these methods almost inevitably will involve deliberation and premeditation. Because it is not at issue in this case, I do not address whether conspiracy to commit first degree murder is a possible crime in cases in which the first degree murder theory would be felony murder, rather than deliberation and premeditation. Presumably, if it is possible for a defendant to be convicted of conspiracy to commit first degree murder on a felony-murder theory, under today's holding the prosecution would have to prove intent to kill, even though it is not an element of first degree felony murder."

## II

The majority rejects this analysis. Instead, it concludes that conspiracy to murder is a unitary crime requiring proof of only intent to kill, the mental state of second degree murder, but subject to the punishment for first degree murder.[2] In doing so, it implicitly rejects the well-settled understanding of conspiracy law that this court reaffirmed in *Swain, supra,* 12 Cal.4th 593.

Conspiracy, as *Swain* explained, is a dual-intent crime requiring both the intent to agree with one's coconspirators to commit the target crime and the intent to commit all the elements of the target crime. (*Swain, supra,* 12 Cal.4th 593, 600.) In particular, to convict a defendant of conspiracy, the jury must find that during the conspiracy the defendant possessed the mental state required to commit the target crime. *Swain* itself illustrates this point. There, this court considered whether it was possible to conspire to commit an "implied malice" murder, in which the element of malice is implied by the intent to do an act dangerous to human life that results in a killing, in contrast to express malice murders, in which the element of malice is established by proof of intent to kill. (*Id.* at p. 601.) *Swain* rejected the possibility of conspiracy to commit implied-malice second degree murder because in cases of implied malice the element of malice never exists in advance of the completed crime; to recognize such a conspiracy would permit the conviction for conspiracy to murder of a defendant who lacked the necessary mental state of either express malice—the intent to kill—or implied malice. (*Id.* at p. 603.) The United States Supreme Court has likewise recognized that "to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." (*United States* v. *Feola* (1975) 420 U.S. 671, 686 [95 S.Ct. 1255, 1265, 43 L.Ed.2d 541].)

Another fundamental feature of conspiracy law is that the punishment for conspiracy to commit the target crime is the same as that for the target crime. (Pen. Code, § 182 [Conspirators who conspire to commit a felony

---

[2]The majority contends that it does no such thing but that it "merely recogniz[es] that the mental state required for conviction of conspiracy to commit express malice murder *necessarily equates with and establishes* the mental state of deliberate and premeditated first degree murder." (Maj. opn., *ante,* at p. 1232, fn. 3.) Despite its protestations, however, the majority nevertheless refuses to require the jury to find the existence of the elemental facts of premeditation and deliberation, as a jury must find before convicting a defendant of first degree murder. Instead, it holds that intent to kill (the mental state of second degree murder) is the only mental state the jury need find to convict the defendant of conspiracy to murder, the punishment for which is that of first degree murder. Judicial presumption of premeditation and deliberation, however, is no substitute for jury fact-finding on those issues.

"shall be punishable in the same manner and to the same extent as is provided for the punishment of that felony. If the felony is one for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony defendant conspired to commit."].) In combination with the principles of conspiracy law mentioned in the preceding paragraph, this means that before a conspirator may receive the punishment designated for a given degree of the target crime the jury must find the conspirator possessed the mental state required by that degree of the target crime.

Here, the majority dispenses with that requirement. Under the majority's approach, every murder conspiracy will be punished as first degree murder even though the jury will have found only the mental state of second degree murder—intent to kill. The majority obscures this point by referring to the crime on which the jury was instructed as "the target offense of murder *simpliciter.*" (Maj. opn., *ante*, at p. 1239.) There is, of course, no such crime as murder *simpliciter*, only first degree murder and second degree murder. What the jury here was instructed on were the elements of *second degree* murder; what defendant has received as punishment is the punishment for *first degree* murder.

Thus, under the majority's holding, conspiracy agreements to commit only the elements of second degree express-malice murder (e.g., agreements that lack premeditation and deliberation) and conspiracy agreements that reflect the premeditation and deliberation that distinguishes first degree murder would both be subject to the punishment established for first degree murder. *As I have noted, this will produce the unjust and illogical result that second degree express-malice murder conspiracies will be punished more severely than the completed crime of second degree murder.*

The majority seeks to justify its departure from the established rules of conspiracy law by asserting that every "conspiracy to commit murder is necessarily [a] conspiracy to commit premeditated . . . first degree murder." (Maj. opn., *ante*, at p. 1238.) If the majority means that premeditation and deliberation are elements of conspiracy to commit murder but the jury is excused from finding those elements because their existence is presumed as a matter of law, then it has unconstitutionally removed those elements from the jury's consideration. (See *People* v. *Flood* (1998) 18 Cal.4th 470, 548 [76 Cal.Rptr.2d 180, 957 P.2d 869] (dis. opn. of Kennard, J.); *Sandstrom* v. *Montana* (1979) 442 U.S. 510, 523-524 [99 S.Ct. 2450, 2458-2459, 61 L.Ed.2d 39].) If the majority means instead that premeditation and deliberation, although elements of first degree murder, are not elements of conspiracy to commit murder, then its further holding that all murder conspirators should receive the punishment for first degree murder violates the

fundamental principle of Penal Code section 182 that a conspiracy defendant may receive the punishment specified for a given degree of the target crime only if the defendant had the mental state required by that degree of the crime.

Nor is the majority correct that as a factual matter it is impossible for two or more persons to conspire without deliberation and premeditation. By creating the separate crimes of (1) first degree murder for killings in which the killer acts not only with the intent to kill but with premeditation and deliberation, and (2) second degree murder for killings in which the killer acts with the intent to kill but *without* premeditation and deliberation, the Legislature has recognized that the intent to kill can exist without premeditation and deliberation. Contrary to the majority, there is no logical reason why a sudden intent to kill that is neither " ' "considered beforehand" ' " (the majority's definition of premeditation, maj. opn., *ante*, at p. 1232) nor " ' "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action" ' " (the majority's definition of deliberation, *ibid*.), cannot arise in two persons just as it can arise in one.

Conspiracies do not require formal expressions of agreement or advance planning. For example, with a shout of "let's get him," two friends who have been drinking all night in a bar can, without premeditation and deliberation, impulsively form and share the intent to kill when their sworn enemy walks in. Similarly, a sudden and unexpected encounter on disputed turf between groups from two different gangs can similarly lead to a spontaneous and unreflective agreement to kill. Juries are capable of distinguishing between first degree murder conspiracies requiring premeditation and deliberation and second degree murder conspiracies requiring only intent to kill.[3] For this reason, the federal courts recognize murder conspiracies of varying degrees. (*U.S.* v. *Croft* (9th Cir. 1997) 124 F.3d 1109, 1122-1123 [holding that federal law recognizes conspiracy to commit second degree murder when conspirators act with intent to kill but without premeditation and deliberation]; *United States* v. *Chagra* (5th Cir. 1986) 807 F.2d 398, 400-402 [same].) Indeed, if the majority in this case truly believes that all murder conspiracies are premeditated and deliberate, it would have little reason to oppose instructing the jury that it must find premeditation and deliberation.

In addition, as I have explained above, the majority's position is contrary to the ordinary meaning of Penal Code section 182. The majority seeks to

---

[3]For example, in the record in a pending matter in this court, People v. Armigo (Super. Ct. San Diego County, 1996, No. SCN 020319), the evidence showed an unexpected encounter between members of two rival gangs in a convenience store that ended in the pursuit and stabbing of an associate of one gang by members of a rival gang. The jury convicted defendants of conspiracy to commit second degree murder and rejected a possible verdict of conspiracy to commit first degree murder.

justify this departure by suggesting that to follow section 182's plain language punishing murder conspiracies of undetermined degree the same as first degree murders would create an "illogical" "anomaly" (maj. opn., *ante,* at p. 1237) in the general rule that conspiracies of undetermined degree are subject only to the punishment prescribed for the lowest degree of the target crime. (See Pen. Code, § 182.) The difference in treatment under section 182 between murder conspiracies and all other conspiracies exists, of course, but the Legislature could hardly have made clearer its intent to create that distinction. In the same sentence of section 182, the Legislature both stated the general rule ("If the degree is not so determined, the punishment for conspiracy to commit the felony shall be that prescribed for the lesser degree,") and stated that murder is an exception to that rule ("except in the case of conspiracy to commit murder, in which case the punishment shall be that prescribed for murder in the first degree"). We defeat the Legislature's purpose when we rewrite its statutes to create consistencies it did not intend.

Moreover, there is a logical reason why the Legislature would provide that, when the trier of fact fails to determine the degree of the crime, *murder* conspiracies are punished in the first degree while conspiracies to commit all other crimes are punished in the lesser degree. Deliberate and premeditated murders are murders of the first degree. As this court recognized in *People* v. *Kynette,* in the typical murder conspiracy the conspirators will act with premeditation and deliberation in forming an agreement to commit the crime. (*People* v. *Kynette* (1940) 15 Cal.2d 731, 745 [104 P.2d 794].) Punishing murder conspiracies of unspecified degree as first degree murder conspiracies simply accords with the statistical reality that the vast majority of murder conspiracies will involve premeditation and deliberation.

The deliberate and premeditated nature of most conspiracies, however, does not similarly increase the likelihood that conspiracies to commit crimes other than murder will be first degree conspiracies. Unlike murder, other crimes of degree do not become first degree crimes by being premeditated and deliberate; as to those crimes, the degree of the crime typically turns on the nature of the defendant's acts rather than the defendant's mental state. For example, the degree of a robbery or burglary can vary depending on the location where the crime occurs. (Pen. Code, §§ 212.5, 460.) Thus, the fact that conspiracies to commit crimes other than murder may also reflect a premeditated and deliberate intent to commit the underlying crime does not support a similar "presumption" that the crime, if committed, would be in the first degree.

CONCLUSION

In holding that, unlike conspiracy to commit any other target crime that is divided into degrees, conspiracy to murder is a unitary crime requiring only

the mental state of second degree murder, yet subject to the punishment for first degree murder, the majority acts contrary to the punishment language of Penal Code section 182, contrary to our 1974 decision in *People* v. *Horn* (1974) 12 Cal.3d 290 [115 Cal.Rptr. 516, 524 P.2d 1300], and contrary to the Legislature's acceptance of *Horn*. Perhaps more troubling, by holding that conspiracy to murder is subject to the punishment for first degree murder without requiring proof of the mental state of first degree murder, the majority creates for the first time a conspiracy crime that does not require proof of the mental state of the target crime, and creates as well the possibility that a defendant will be punished more harshly for conspiring than for the completed crime.

I would continue to adhere to this court's previous recognition that, under Penal Code section 182, the Legislature has made separate crimes of conspiracy to commit first degree murder (subject to the punishment prescribed for first degree murder) and conspiracy to commit second degree murder (subject to the punishment prescribed for second degree murder). Accordingly, I would reverse the judgment of the Court of Appeal.

Appellant's petition for a rehearing was denied October 14, 1998. Kennard, J., was of the opinion that the petition should be granted.