Filed 12/12/22 P. v. Hunter CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEFFREY HUNTER,<br><br>    Defendant and Appellant. | E078862<br><br>(Super.Ct.No. RCR20413)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. Michael Knish, Judge. Affirmed.

Jeffrey Hunter, in pro. per., and Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant, Jeffrey Hunter, appeals from the denial of his petition for resentencing under Penal Code section 1172.6 (formerly section 1170.95).[1] Defendant was convicted

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

in 1993 of two counts of conspiracy to commit murder, and one count of first degree murder, with two special circumstances for murder for financial gain and murder committed by lying in wait. The jury also found that a principal was armed with a handgun at the time of the murder. Defendant was sentenced to a term of 25 years to life on the conspiracy count, with a consecutive term of life without possibility of parole. Defendant appealed the conviction, and we affirmed in full on May 5, 1995, case No. E012808, *People v. Hunter* (nonpub. opn.).

Following enactment of Senate Bill No. 1437, defendant filed a petition for resentencing, but the trial court determined he was ineligible. Defendant now appeals that order. Defendant's appellate counsel filed an opening brief raising no arguable issues. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*); *Anders v. California* (1967) 386 U.S. 738 (*Anders*).) Defendant filed a supplemental brief on his own behalf, presenting several claims of error. We affirm.

## BACKGROUND

We recite the facts of the offenses from our opinion on direct appeal:

Hunter was an army sergeant in charge of a tank crew at Fort Irwin. Christopher Geier and Mark Redden were part of his crew.

Hunter and his wife, both natives of the New Orleans area, had dissolved their marriage and were on good terms, at times, discussing reconciliation. Even after the dissolution, Hunter maintained a life insurance policy on his ex-wife, in which he was named as the beneficiary. As part of the settlement at the time of their dissolution, Hunter and his ex-wife planned for Hunter to pay off all their debts, then to begin paying

2

his ex-wife support for their two daughters in the spring of 1991. However, in December 1990, Hunter told his ex-wife that he was "really in debt" and would not be able to meet his obligations to her.

In the late fall of 1990, Hunter began an affair with a woman who was married and also had two daughters.

In mid-December 1990, Hunter purchased an engagement ring at a local jewelry store. On December 20, he traveled to the New Orleans area, where he presented the ring and became engaged to a woman whom he had been romancing for some time.

That same day, Geier and his army buddy, Winstein, also arrived in New Orleans. Winstein had been recruited earlier by Geier to drive there so that Geier could kill Hunter's ex-wife. Geier said that Hunter masterminded the plot and he would share with them some of the money he would be receiving from his ex-wife's life insurance. By the time they arrived, Hunter's ex-wife was staying with her daughters in the home of Hunter's sister. Hunter's sister recalled that at one point she had given her brother a key to her home.

That night, a man Hunter's ex-wife identified at trial as Geier, non-forcibly entered the sister's home, went to the bedroom where the ex-wife was sleeping with one of her daughters, flipped on the overhead light, and shot the woman in the face. Fortunately for the ex-wife, the bullet entered through her jaw and went up into her gums, dislodging four teeth, but doing no other damage. When Hunter arrived at the hospital where his ex-wife was being treated for her injuries, he jokingly asked her what kind of enemies she had been keeping.

Many telephone calls between the homes where Hunter was staying, where Geier lived and where Hunter's married girlfriend lived and worked were made during this period and for a month after Hunter returned to Fort Irwin when his Christmas vacation ended. Hunter's girlfriend frequently complained to her coworkers about her husband, who, she feared, was going to divorce her and take their daughters. Hunter's girlfriend said she wished her husband was dead. She was a 50-percent beneficiary on her husband's life insurance policy.

Geier again approached Winstein, asking him to drive him to and from the killing of Hunter's girlfriend's husband. Geier was to commit the murder and Hunter was going to give him some of the money collected from the husband's life insurance policy. This time, Winstein declined to become involved.

During the late hours of February 7, 1991, or the early hours of February 8, Geier and Redden entered Hunter's girlfriend's home, using a key she had given to Geier earlier that evening. They bludgeoned and stabbed to death the girlfriend's husband, as he lay in a bed in his daughters' bedroom. His older daughter witnessed at least part of the attack, as she had her father's blood splattered and smeared on her. After the killing, the girlfriend returned home from work and stabbed her husband's lifeless body in the back. Blood consistent with Geier's was found in parts of the house, and outside, including some drops that had mixed with the husband's in midair.

Hunter's girlfriend was arrested, almost immediately, for the murder of her husband. Hunter's arrest did not come until May 1991, by which time he was married to a woman, unconnected to any of these crimes. (*People v. Hunter,* E012808, pp. 2-5)

4

A jury convicted Jeffrey Hunter of two counts of conspiracy to commit first degree murder (§ 182, subd. (1)) and murder (§ 187). As to one of the conspiracies, the jury found that a principal was armed with a handgun. (§ 12022, subd. (a)(1).) As to the murder, the jury found the special circumstances that it had been committed for financial gain (§ 190.2, subd. (a)(1)) and while lying in wait (§ 190.2, subd. (a)(15)). Hunter was sentenced to prison for 25 years to life for the conspiracy to murder (count 4) and for life without possibility of parole for first degree murder with two special circumstances (count 1).) Defendant appealed his convictions and we affirmed on May 5, 1995. (*People v. Hunter,* E012808, nonpub. opn.)

On or after January 13, 2019, following the enactment of Senate Bill No. 1437, defendant filed a petition for resentencing. {CT 64} The People argued the statute was unconstitutional {1 CT 80}, and the trial court agreed. {1 CT 205} Subsequently, on September 16, 2020, defense counsel requested that the court re-calendar the matter. {1 CT 210} On October 1, 2021, the People filed a suppositional brief in opposition to defendant's petition. {2 CT 2} On April 14, 2022, the trial court denied the petition finding defendant failed to make a prima facie showing he was entitled to relief. {2 CT 43} Defendant appealed that order. {2 CT 53} We reject his contentions and affirm.

## DISCUSSION

This court appointed counsel to represent defendant on appeal. After examining the record, counsel filed an opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, (*Wende*), that raises no issues and asks us to independently review the record. We invited defendant to submit a supplemental brief, which he has done, arguing that the trial

5

court erred (1) in finding he failed to make a prima facie showing when both defense counsel and the prosecution conceded he had made such a showing, (2) the trial court erred by making factual findings in determining he was ineligible, and (3) his appellate counsel is ineffective for filing a brief in accordance with *Wende* procedures despite issues proposed by defendant in correspondence.

Defendant's arguments lack merit. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, 124, we address the contentions raised by defendant and explain why they fail.

**DISCUSSION**

**1.**     ***The Trial Court Properly Found Defendant Is Ineligible For Relief.***

Defendant argues that the trial court erred in determining he had failed to make a prima facie showing of entitlement to relief because both parties conceded he had made a prima facie showing. {Suppl. AOB p. 6} It is true that defense counsel urged the trial court to issue an order to show cause {1 CT 221}, and the People's supplemental opposition to defendant's petition agrees the trial court could issue an order to show cause {2 CT 4}, but that does not bind the trial court to do so.

Section 1172.6, subdivision (c) (formerly section 1170.95), provides in relevant part that "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." Nothing in the section requires a court to issue an order to show cause because the parties agree to it. "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order

6

to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

Here, the court, after reviewing the documents presented by the parties, concluded that the defendant was ineligible as a matter of law due to the nature of the convictions. In doing so, the court ruled correctly. Murder for financial gain requires a first degree murder conviction, which, in turn, requires a jury to find premeditation and deliberation. (§ 189.) To support a jury finding of the special circumstance of murder for financial gain, the jury necessarily had to find that the murder was intentional. (§ 190.2, subd. (a)(1).) To support the lying in wait special circumstance, the jury had to find that defendant intentionally killed the victim by means of lying in wait. (§ 190.2, subd. (a)(15).)

Findings that defendant premeditated, deliberated, and intentionally killed a murder victim are antithetical to the purposes of Senate Bill No. 1437, which is aimed at insuring that person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*People v. Medrano* (2021) 68 Cal.App.5th 177, 180.)

Here, defendant planned two killings, and conspired with other individuals to carry out the deeds although only one attempt was successful in causing a death. "'[A] conviction of conspiracy to commit murder requires a finding of intent to kill.'

7

[Citation.]" (*People v. Medrano*, *supra*, 68 Cal.App.5th at p. 183.)  In fact, to be convicted of conspiracy, a defendant must harbor the specific intent to carry out the contemplated crime.  (*People v. Cortez* (1998) 18 Cal.4th 1223, 1229.)

The trial court correctly concluded defendant was not convicted of felony murder, nor was he convicted under the natural and probable consequences doctrine, nor was malice imputed to him by virtue of his participation in a felony.  He was convicted of premeditated and deliberate murder, which he planned and organized in hopes of profiting from the death of the victim.

It matters little whether the parties appearing before the trial court agreed an order to show cause should issue because the same result would occur.  There was no error.

### 2. The Trial Court Did Not Make Improper Factual Findings in Denying Defendant's Petition.

Defendant argues that the trial court made improper factual findings in determining he was ineligible for resentencing. {Supp. B., p. 8}  He notes there was an unreported conference during which the court discussed the elements of the crimes {Supp. B., p. 9}, but due to the lack of record, we are unable to consider that information. In any case, we disagree with defendant's contention because reviewing the elements of the crimes to determine defendant's eligibility involves a legal conclusion, not a factual conclusion.

As a matter of law, a premeditated murder renders a defendant ineligible because such a crime necessarily involves express malice, not imputed malice.  Further, the nature of the special circumstances findings required the jury to find an intentional killing, rather

8

than a killing based on the natural and probable consequences doctrine, or due to the defendant's participation in a felony. As a matter of law, defendant's convictions and the special circumstances findings render him ineligible because sections 188 and 189 did not amend, alter, or modify the crime of conspiracy to murder, or render a person convicted of first degree premeditated murder eligible for resentencing.

**3.      *Appellate Counsel was Not Ineffective*.**

As we have pointed out, the trial court did not err; by extension, therefore, appointed counsel on appeal was not ineffective in failing to find arguable error.

A claim of ineffective assistance of appellate counsel requires a showing of both deficient performance and prejudice. (*In re Reno* (2012) 55 Cal.4th 428, 488.) Here, we have concluded the trial court correctly determined defendant failed to make a prima facie showing he was entitled to relief. Therefore, counsel's decision to not pursue this claim on appeal did not prejudice defendant.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.

We concur:

McKINSTER_____
J.

FIELDS_____
J.

9