Filed 10/31/23  P. v. Gray CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DARRELL MARTIN GRAY,<br><br>    Defendant and Appellant. | G061405<br><br>(Super. Ct. No. 06NF2588)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge.  Affirmed.

Michael Clough, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Alan A. Amann, Robin Urbanski and Joshua Patashnik, Deputy Attorneys General, for Plaintiff and Respondent.

Darrell Martin Gray challenges the trial court's summary denial of his petition for resentencing pursuant to Penal Code section 1172.6 (all further undesignated statutory references are to this code). We affirm because we conclude the record established conclusively he is ineligible for resentencing as a matter of law.

FACTS

A detailed recitation of the underlying case facts is set forth in our prior unpublished opinion, *People v. Gray*, July 2, 2013, G045645 (*Gray*). As relevant to this appeal,[1] Gray was involved in a 2006 gang shooting on a freeway that resulted in the death of Darnell Little. The death occurred after Little's vehicle (carrying three others) was shot at from a vehicle Gray was riding in as a passenger. Nine bullet casings were recovered from the scene. The chain of events from the shooting was that Little's vehicle crashed and became disabled on the freeway, Little exited his vehicle, and then was struck dead by a truck. The vehicle Gray had been a passenger in had been driven by Randle Hester.[2]

In 2008, a jury convicted Gray on seven criminal counts: first degree murder (§ 187, subd. (a); count 1); shooting at an occupied vehicle (§ 246; count 2); conspiracy to commit murder (§ 182, subd. (a)(1); count 3); attempted murder (§§ 664,

---

[1] In his direct appeal in 2013, Gray asserted, among other issues, that he received unconstitutionally ineffective assistance of counsel. (*Gray, supra*, G045645.) We concluded that although the question of resulting prejudice presented an "extremely close case," Gray's assertions should be resolved by a petition for writ of habeas corpus. Gray subsequently pursued the contention, among others, through a habeas petition presented to a federal district court. Following that district court's ruling against Gray's petition, the Ninth Circuit Court of Appeal has stayed its review of the merits, pending our resolution of this appeal. Given this context, we note that none of our discussion about Gray's resentencing petition based on section 1172.6 is meant to bear on the merits of Gray's habeas petition arguments.

[2] Hester was jointly tried with Gray and his convictions were affirmed on appeal. (*People v. Hester*, Nov. 30, 2010, G041657 [nonpub. opn.].)

subd. (a), 187, subd. (a); counts 5-7)[3]; and street terrorism (§ 186.22, subd. (a); count 8). The jury also found the following facts true: for count 1, that Gray committed the murder during a drive-by shooting and to further the activities of a criminal street gang (§ 190.2, subds. (a)(21) & (22)); for all convictions except on count 8, that Gray committed the crimes for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)); and for counts 1, 2, and 5 through 7, that he caused great bodily injury by vicariously discharging a firearm (§ 12022.53, subds. (c), (d) & (e)(1)).

The trial court sentenced Gray to life in prison without the possibility of parole plus a consecutive term of 25 years to life for the vicarious firearm use finding on count 1. For the other counts and findings, the court imposed concurrent sentences or stayed them. We affirmed the judgment in 2013. (*Gray, supra*, G045645.)

"In 2017, the Legislature adopted a concurrent resolution declaring a need to reform the state's homicide law 'to more equitably sentence offenders in accordance with their involvement in the crime.' [Citation.]" (*People v. Strong* (2022) 13 Cal.5th 698, 707 (*Strong*).) Over the next five years, the Legislature implemented "significant changes to the scope of murder liability for those who were neither the actual killers nor intended to kill anyone, including certain individuals formerly subject to punishment on a felony-murder theory." (*Ibid.*) "In addition to substantively amending sections 188 and 189," i.e., the statutes governing the felony-murder rule and liability based on the natural and probable consequences doctrine, the Legislature established a statutory "procedure for convicted murderers who could not be convicted under the law as amended" to seek retroactive relief in the form of resentencing. (*People v. Lewis*

---

[3] The jury found Gray not guilty of count 4, which had been the attempted murder charge for decedent Little.

3

(2021) 11 Cal.5th 952, 959 (*Lewis*).) The current framework governing resentencing petitions is contained in section 1172.6.[4]

In the trial court, the parties disputed the extent of records the court needed to consider to soundly decide whether to order an evidentiary hearing on Gray's resentencing petition. The prosecutor argued the record then before the court was sufficient without, for example, referencing the reporter's transcript of the trial proceedings. Gray argued there were "critical parts of the record" missing, for example, the transcript of the prosecutor's closing arguments to the jury.

After a continuance and further briefing on the extent of records necessary, at an April 2022 hearing, the trial court denied Gray's request to take judicial notice of the transcripts of trial proceedings as well as the record of his direct appeal. In an oral pronouncement at the hearing, the court concluded that review of Gray's presented records was not necessary for the court to conclude Gray had failed to demonstrate a prima facie showing of entitlement to resentencing. Gray timely appealed.

DISCUSSION

I. *Standard of Review and Governing Law*

Gray asks us to reverse the trial court's summary denial ruling, which we review de novo. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 981, abrogated on other grounds by *Lewis, supra*, 11 Cal.5th at p. 963.) Gray contends the denial was erroneous because he presented a prima facie case for relief under section 1172.6, subdivision (a), which required the following showing: (1) "A complaint, information, or indictment was

---

[4] The initial framework was established by former section 1170.95 (Sen. Bill No. 1437 (2017-2018 Reg. Sess.); Stats. 2018, ch. 1015, § 4), substantively amended three years later (Sen. Bill No. 775 (2021-2022 Reg. Sess.; Stats. 2021, ch. 551, §§ 1-2), then renumbered, the following year, to section 1172.6 without substantive change (Assem. Bill No. 200 (Reg. Sess. 2021-2022); Stats. 2022, ch. 58, § 10). For clarity, we will only refer to the statute as section 1172.6 in our discussion.

filed against [Gray] that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice [was] imputed to [him] based solely on [his] participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) he "was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which [he] could have been convicted of murder or attempted murder"; and (3) he "could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."

"When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' [Citation.]" (*Strong, supra*, 13 Cal.5th at p. 708.) "[F]actfinding [is] prohibited at the prima facie stage." (*Id.* at p. 720.)

II. *Analysis*

Gray contends an evidentiary hearing should have been ordered because murder liability was imposed on him based on a theory of imputed malice. As we explain below, Gray has not shown the trial court's summary denial of his petition rests on reversible error. (Cal. Const., art. VI, § 13.) He failed to make a prima facie case for section 1172.6 resentencing benefits because he failed to satisfy the third requirement of its subdivision (a)—to show he "could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189." (*Id.*, subd. (a)(3).)

On Gray's three attempted murder convictions (counts 5-7), the Attorney General contends the trial court's summary denial was sound because the jury found the attempted murders were premeditated and deliberate and was not instructed on the natural

5

and probable consequence doctrine.[5] Gray does not dispute these two points and we agree with the Attorney General they justify affirming the court's denial as to those convictions.

Gray argues he should have received an evidentiary hearing because he was not the shooter and the jury convicted him based on a "kill zone" theory that would not be justified based on subsequent changes in the law. While Gray is correct that since his 2008 conviction it has become more difficult to prosecute attempted murder based on this theory (*People v. Canizales* (2019) 7 Cal.5th 591, 607 [discussing two factual conditions to warrant "the kill zone theory for establishing the specific intent to kill required for conviction of attempted murder"]), that general point does not demonstrate malice was imputed to (*id.* at p. 609 ["the kill zone theory is one of concurrent intent"]), nor does it show the change in the law on the theory was "'because of'" the recent changes to sections 188 and 189 (*Strong, supra*, 13 Cal.5th at p. 712, citing section 1172.6, subdivision (a)(3)). Gray's general point does not negate the undisputed verdicts

---

[5] The trial court instructed the jury on aider and abettor liability based on CALCRIM No. 401: "To prove that a defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone *aids and abets* a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime. [¶] If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor. [¶] If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him an aider and abettor." The instruction did not include language on the natural and probable consequences doctrine.

showing the jury found he had intended to kill the three victims of his attempted murder counts when their vehicle (driven by decedent Little) was shot multiple times.[6]

Next, on Gray's liability for murder (count 1), the Attorney General contends that, in addition to the fact the jury was not instructed on the natural and probable consequence doctrine eliminated by the recent changes to sections 188 and 189, "the trial court's ruling was correct because [of] . . . [the jury's] guilty verdict on conspiracy to commit murder," among other grounds. We agree the two points justify affirming the court's summary denial as to the murder conviction.

"'[C]onspiracy is a specific intent crime requiring an intent to agree or conspire, and a further intent to commit the target crime, here murder, the object of the conspiracy.' [Citation.]" (*People v. Whitson* (2022) 79 Cal.App.5th 22, 31-32, quoting *People v. Swain* (1996) 12 Cal.4th 593, 602.) Each conspirator is liable for the acts of coconspirators carrying out their conspiracy's common purpose. (*In re Hardy* (2007) 41 Cal.4th 977, 1025.)

The jury convicted Gray for both murdering Little and conspiring to do so. The trial court correctly instructed the jury that to find Gray liable for the conspiracy, it had to find that, "[a]t the time of the agreement, [Gray] and the other alleged member of the conspiracy intended that one or more of them would intentionally and unlawfully kill." (See *People v. Whitson, supra*, 79 Cal.App.5th at p. 32 [in reversing on murder conviction, discussing lack of correct instruction on murder conspiracy liability].) There

---

[6] The kill zone theory the jury was instructed on, based on CALCRIM No. 600, required findings of intent to kill for all three passenger's in Little's vehicle. The instruction as given stated: "A person may intend to kill a specific victim or victims and at the same time intend to kill anyone in a particular zone of harm or 'kill zone.' In order to convict a defendant of the attempted murder of [the three victims in counts 5 through 7], the People must prove that the defendant not only intended to kill Darnell Little but also either intended to kill [all three victims] or intended to kill anyone within the kill zone. If you have a reasonable doubt whether the defendant intended to kill [the three victims] or intended to kill Darnell Little by harming everyone in the kill zone, then you must find the defendant not guilty of the attempted murder of [the three victims]."

7

is a strong presumption jurors will follow all instructions given, and nothing in the record indicates the jury failed to do so in the underlying trial. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

Gray does not challenge the instructions given on conspiracy. Nor does he challenge the Attorney General's accurate observation that neither of the two alternative theories of first degree murder that were presented to the jury—(1) premeditation and deliberation and (2) shooting a firearm from a motor vehicle (which specifically required a factual finding that Gray or Hester "intentionally shot at a person who was outside the[ir] vehicle" and "intended to kill that person")—rested on a theory of natural and probable consequences doctrine eliminated by the recent changes to sections 188 and 189.

Gray asserts the use of the phrase "natural and probable consequences" in another context—in certain parts of deliberation instructions given and during the prosecutor's closing arguments—misled the jury to convict him based upon the eliminated doctrine. But the assertion presents only a superficial ambiguity recently explained in *People v. Carney* (2023) 14 Cal.5th 1130 (*Carney*). There, the California Supreme Court clarified the two mutually exclusive concepts of *natural and probable consequence*: one connected to the actus reus element of criminal liability and the other the mens rea element required for crimes other than strict liability offenses. (*Id.* at p. 1137 ["'Murder includes both actus reus and mens rea elements'"].) Most relevant here, *Carney* rejected the appellants' argument there that the actus reus concept of natural and probable consequences "is 'a type of natural and probable consequences liability that is inconsistent' with [*People v.*] *Chiu* [(2014) 59 Cal.4th 155 (mens rea natural and probable consequences doctrine cannot justify aider and abettor liability for first degree premeditated murder)] and Senate Bill No. 1437." (*Carney, supra*, 14 Cal.5th at p. 1145.)

We apply *Carney* here and conclude the presence of the phrase "natural and probable consequences" in the record does not show the trial court's summary denial of Gray's resentencing petition rests on error.  The jury instructions on murder liability and the jury's findings on those instructions establish conclusively that Gray was convicted based on findings he specifically intended to act in concert with Hester to effect the death of a human.  (*People v. Cortez* (1998) 18 Cal.4th 1223, 1238.)  In sum, we discern no error because we conclude Gray's petition did not meet the law's requirement to "make out a prima facie case that [he] 'could not presently be convicted of murder or attempted murder because of changes to . . . [s]ection 188 or 189 made effective January 1, 2019.'" (*Strong, supra*, 13 Cal.5th at p. 717, quoting § 1172.6, subd. (a)(3).)

## DISPOSITION

The postjudgment order denying the section 1172.6 petition is affirmed.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


MOTOIKE, J.

9