Filing 1/22/24 (opinion on rehearing)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B324567 |
| Plaintiff and Respondent, | (Super. Ct. No. CR28216) |
| | (Ventura County) |
| v. | OPINION ON REHEARING |
| VINCENT MEDRANO, | |
| Defendant and Appellant. | |

Vincent Medrano again appeals an order denying his Penal Code section 1172.6 petition for resentencing.[1] The order was made at the prima facie stage of the proceedings. This is his second petition for resentencing.

In 1991 appellant was convicted of two counts of first degree murder with a multiple-death special-circumstances finding (§§ 187, 189, 190.2, subd. (a)(3)), two counts of attempted first degree murder (§§ 664/187, 189), and one count of conspiracy to commit first degree murder (§ 182). The jury found true allegations that a principal in the commission of the offenses had been armed with a firearm. (§ 12022, subd. (a)(1).) Appellant

---

[1] All statutory references are to the Penal Code.

was sentenced to prison for 50 years to life plus one year for a firearm enhancement. In 1994 we affirmed the judgment in an unpublished opinion, *People v. Medrano* (Jul. 26, 1994, B065832).

In 2019 appellant filed his first section 1172.6 petition. After issuing an order to show cause, the trial court conducted an evidentiary hearing pursuant to section 1172.6, subdivision (d). The trial court denied the petition, and we affirmed in *People v. Medrano* (2021) 68 Cal.App.5th 177, hereafter referred to as "*Medrano*" or "our 2021 opinion." We held "that section [1172.6] relief is unavailable to a petitioner [such as appellant] concurrently convicted of first degree murder and conspiracy to commit first degree murder where both convictions involve the same victim" because the "[c]onviction of conspiracy to commit first degree murder shows, as a matter of law, that the 'target offense' is murder . . . ." (*Id.* at p. 179.)

In the present appeal we conclude that the above holding is the law of the case and conclusively establishes at the prima facie stage that appellant is not entitled to resentencing based on his second 1172.6 petition. Accordingly, we again affirm.

Our conclusion may be at variance with the holding of *People v. Harden* (2022) 81 Cal.App.5th 45, 50 (*Harden*): "[P]rior to [an evidentiary] hearing under section [1172.6], subdivision (d)(3), the law-of-the-case doctrine cannot conclusively establish disentitlement [to relief under section 1172.6]." We explain below why the holding of *Harden* is inapplicable here. We also explain why our conclusion is consistent with *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*).)

*Facts*

The following facts are taken from *Medrano, supra,* 68 Cal.App.5th at p. 179: Appellant and Carlos Vargas purchased a

2

.22 caliber semi-automatic rifle. Appellant "scored" the "tip" of the rifle's bullets in the belief that "the scoring would make the bullets more explosive." As overt act No. 7 underlying the conspiracy charge, the jury found that appellant, Vargas, Edward Throop, and Joseph Scholle had "discussed among themselves committing a drive-by shooting."[2] Vargas drove them to Cabrillo Village in Ventura County. "Throop held the rifle and sat in the back seat next to appellant." Throop pointed the rifle out the window and fired multiple shots at a group of people attending a baptism party. As Vargas drove away, Scholle shouted the names of rival gangs. Two men attending the baptism party died of gunshot wounds. Two other men were shot but survived.

*Senate Bill No. 1437 Eliminated the Natural and Probable*
*Consequences Doctrine as a Basis for Murder Liability*

Senate Bill No. 1437 (S.B. 1437) became effective on January 1, 2019. (Stats. 2018, ch. 1015.) It "imposed a new requirement that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. (§ 188, subd. (a)(3).) 'Malice shall not be imputed to a person based solely on his or her participation in a crime.' [Citation.] One effect of this requirement was to eliminate liability for murder as an aider and abettor under

---

[2] "A conviction of conspiracy requires proof . . . of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy." (*People v. Morante* (1999) 20 Cal.4th 403, 416.) The jury found that appellant and his co-conspirators had jointly committed seven overt acts, including that they had (1) purchased the rifle used in the murders, (2) "scored the bullets," (3) "armed themselves with [the] rifle," and (4) "hid the rifle used in the murders."

3

the natural and probable consequences doctrine.  [Citation.]
 '[U]nder the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the "natural and probable consequence" of the crime the accomplice aided and abetted (i.e., the nontarget offense).  [Citation.]  A nontarget offense is the natural and probable consequence of a target offense "if, judged objectively, the [nontarget] offense was reasonably foreseeable."  [Citation.] . . .' . . . Thus, under prior law, a defendant who aided and abetted an intended assault could be liable for murder, if the murder was the natural and probable consequence of the intended assault.  [Citation.]  The defendant need not have intended the murder or even subjectively appreciated the natural and probable consequences of the intended crime.  [Citation.]  [S.B.] 1437 ended this form of liability for murder."  (*Curiel*, *supra*, 15 Cal.5th at p. 449.)

*Section 1172.6 and Its Legislative History*

Section 1172.6 was added to the Penal Code by S.B. 1437. (Stats. 2018, ch. 1015, § 4.)  Section 1172.6, subdivision (a) originally provided, "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when" certain conditions apply.

Effective January 1, 2022, section 1172.6 was amended by Senate Bill No. 775 (S.B. 775).  (Stats. 2021, ch. 551, § 2.)  S.B. 775 added the following ground for relief to section 1172.6, subdivision (a): the petitioner's murder conviction was pursuant to a "theory under which malice is imputed to a person based

4

solely on that person's participation in a crime." S.B. 775 also amended section 1172.6, subdivision (a) to expand eligibility for resentencing to persons convicted of "attempted murder under the natural and probable consequences doctrine." One of the conditions for relief under amended section 1172.6 is that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (a)(3).)

After a section 1172.6 petition is filed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (§ 1172.6, subd. (c).) "At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense. If only *one* element of the offense is established by the record, the petitioner could still be correct that he or she could not currently be convicted of the relevant offense based on the absence of *other* elements." (*Curiel*, *supra*, 15 Cal.5th at p. 463.)

If an order to show cause is issued, the court shall conduct an evidentiary hearing to determine the petitioner's eligibility for relief. (§ 1172.6, subd. (d)(1).) At the evidentiary hearing the burden is on the People "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder . . . ." (*Id.*, subd. (d)(3).)

5

*Our 2021 Medrano Opinion*

In our 2021 opinion we noted that "[t]he jury [at appellant's trial] was instructed on the natural and probable consequences doctrine." (*Medrano*, *supra*, 68 Cal.App.5th at p. 182.) Despite this instruction, we concluded: "The prosecutor met his burden [at the evidentiary hearing] of proving, 'beyond a reasonable doubt, that [appellant] is ineligible for resentencing.' (§ [1172.6], subd. (d)(3).) Appellant's conviction of conspiracy to commit first degree murder rendered him ineligible as a matter of law. The conviction established that he had not been 'convicted of . . . [first degree] murder under a natural and probable consequences theory.' (§ [1172.6], subd. (a).) He was convicted of first degree murder under a direct aiding and abetting theory, i.e., he knew and shared the murderous intent of the actual perpetrator, Throop." (*Id.*, at p. 186.)

*The Second Section 1172.6 Petition*

Appellant filed a second section 1172.6 petition (the petition at issue in this appeal) after the effective date of the amendment of that section by S.B. 775. In the trial court he asserted, "This petition is based on S.B. 775, which amended section 1172.6, subdivision (a) to include [as grounds for relief], in addition to felony-murder or murder under the [natural and probable consequences] doctrine, any 'other theory under which malice is imputed to a person based solely on that person's participation in a crime.'" Appellant argued that he had made a prima facie showing that he was convicted of murder pursuant to a theory under which malice had been imputed to him based solely on his participation in the drive-by shootings. In addition, he argued that he had made a prima facie showing that he was convicted of both murder and attempted murder under the

6

natural and probable consequences doctrine.  Relying on *Harden, supra*, 81 Cal.App.5th 45, appellant contended the law of the case doctrine was inapplicable at the prima facie stage of a section 1172.6 proceeding.

*The People's Opposition and the Trial Court's Ruling*

In opposition to appellant's second section 1172.6 petition, the People argued that our holding in *Medrano, supra,* 68 Cal.App.5th 177, is the law of the case.  In denying the second petition, the trial court explained, "[B]ased on the reasoning o[f] the appellate opinion, specifically with regards to the conviction for conspiracy, I will find that the petition is barred, as a matter of law."

*The Law of the Case Doctrine*

"'"'The doctrine of the law of the case is this: That where, upon an appeal, the [reviewing] court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and . . . in any subsequent suit for the same cause of action . . . .'"  The principle applies to criminal as well as civil matters [citations] . . . ." (*People v. Stanley* (1995) 10 Cal.4th 764, 786.)  "We will apply the law of the case doctrine where the point of law involved . . . was "'actually presented and determined by the court.'"" (*People v. Gray* (2005) 37 Cal.4th 168, 197.)  But "the doctrine will not be adhered to where its application will result in an unjust decision, e.g., where there has been a 'manifest misapplication of existing principles resulting in substantial injustice' [citation], or the controlling rules of law have been altered or clarified by a decision or [statutory amendment] intervening between the first

7

and second appellate determinations [citation].'" (*Stanley, supra*, at p. 787.)

*Applicability of the Law of the Case Doctrine at*
*the Prima Facie Stage of a Section 1172.6 Proceeding*

Appellant claims the law of the case doctrine is inapplicable at the prima facie stage of a section 1172.6 proceeding. He relies on *Harden, supra*, 81 Cal.App.5th 45. There, the Court of Appeal held: "At the prima facie stage of an [1172.6] proceeding, it is of course impossible to know what the evidence will ultimately be at an evidentiary hearing that has not yet occurred. We thus agree with Harden that prior to a hearing under section [1172.6], subdivision (d)(3), the law-of-the-case doctrine cannot conclusively establish disentitlement [to relief under section 1172.6]." (*Id.* at p. 50.)

In an earlier appeal from Harden's judgment of conviction, the Court of Appeal had "determined [that at Harden's 2001 trial] there was insufficient evidence to sustain a finding that Harden's role was anything other than that of [the] actual killer." (*Harden, supra*, 81 Cal.App.5th at p. 50.) The Court of Appeal concluded that this determination was not the law of the case. It credited Harden's argument, which was as follows: "[The] law of the case [doctrine] cannot be invoked where there is a "'substantial difference in the evidence'" on retrial of the particular issue. [Citation.] . . . [I]f at [an evidentiary] hearing under subdivision (d) of section [1172.6], the evidence material to [Harden's] role in the murder were substantially the same [as the evidence in Harden's 2001 trial], then law-of-the-case principles would compel the same legal conclusion to be drawn, i.e., that she was the actual killer. But if the evidence were materially different on that issue, . . . [the] law of the case [doctrine] would

8

not apply.  This is because law of the case 'controls the outcome on retrial only to the extent the evidence is substantially the same.' [Citation.]  Where "'there is a substantial difference in the evidence to which the [announced] principle of law is applied, . . . the [doctrine] may not be invoked.'"' (*Id*., at p. 50; see *People v. Boyer* (2006) 38 Cal.4th 412, 442 ["the law-of-the-case doctrine governs only the *principles of law* laid down by an appellate court, as applicable to a retrial of fact, and it controls the outcome on retrial only to the extent the evidence is substantially the same.  [Citation.]  The doctrine does not limit the new evidence a party may introduce on retrial"].)

Appellant asserts, "*Harden* precludes the court from invoking the law of the case doctrine at the prima facie stage because it is unclear what the evidence will be at an evidentiary hearing that has yet to occur.  [Appellant] may present evidence at the evidentiary hearing that contradicts [this court's] conclusion [in our 2021 opinion] that [he] harbored an intent to kill."

The holding in *Harden* should be limited to prohibiting application of the law of the case doctrine at a prima facie hearing where, as in *Harden*, the appellate court's prior determination concerned the sufficiency of the evidence at the petitioner's trial.  At an evidentiary hearing conducted pursuant to section 1172.6, subdivision (d), Harden would have had the opportunity to introduce new evidence showing that she was not the actual killer.  Therefore, the sufficiency of the evidence determination in the earlier appeal from Harden's judgment of conviction could not be the law of the case at the prima facie stage of his section 1172.6 petition.

Unlike *Harden, supra,* 81 Cal.App.5th 45, in *Medrano, supra,* 68 Cal.App.5th 177, we were not concerned with an appellate court's prior determination of the sufficiency of the evidence at appellant's trial. Instead, we were concerned with the effect of the jury's finding that appellant was guilty of both first degree murder and conspiracy to commit first degree murder. We enunciated the following principle of law: "[S]ection [1172.6] relief is unavailable to a petitioner concurrently convicted of first degree murder and conspiracy to commit first degree murder where both convictions involve the same victim" because the "[c]onviction of conspiracy to commit first degree murder shows, as a matter of law, that the 'target offense' is murder . . . ." (*Id*. at p. 179.) This principle of law necessarily applies where, as here, the petitioner has also been concurrently convicted of *attempted* first degree murder and conspiracy to commit first degree murder and both convictions involve the same victim.

At a section 1172.6, subdivision (d) evidentiary hearing, appellant could not introduce new evidence that would affect the validity of the principle of law enunciated in our 2021 *Medrano* opinion. This is the key distinction between *Medrano* and *Harden*. Unlike appellant, the petitioner in *Harden* theoretically could have introduced new evidence to controvert the appellate court's prior determination that, based on the evidence introduced at trial, she must have been the actual killer. Thus, in contrast to *Harden*, the principle of law enunciated in our 2021 opinion is the law of the case.

This principle of law was not altered by S.B. 775's amendment of section 1172.6, subdivision (a) to expand eligibility to persons convicted of murder pursuant to a "theory under which

malice is imputed to a person based *solely* on that person's participation in a crime." (*Ibid.*, italics added.)  A person cannot be convicted of conspiracy to commit first degree murder based on such "imputed" malice.  (*People v. Cortez* (1998) 18 Cal.4th 1223, 1226 ["[T]he crime of conspiracy to commit murder requires a finding of unlawful intent to kill, i.e., express malice"].)

We noted in *Medrano*, *supra*, 68 Cal.App.5th at p. 184: "According to an instruction given before the jury started its deliberations (CALJIC No. 6.10), it could convict appellant of conspiracy to commit first degree murder only if it found he had acted 'with the specific intent to agree to commit the public offense of first degree murder and with the further specific intent to commit such offense.'  In view of this instruction, the conspiracy conviction shows that the jury found appellant had specifically intended to commit first degree murder."  Appellant cannot relitigate this issue.  "[A] section [1172.6] petition is not a means by which a [petitioner] can relitigate issues already decided."  (*People v. Coley* (2022) 77 Cal.App.5th 539, 549.)

Each charge and conviction for a separate count stands or falls on its own.  (*People v. Pahl* (1991) 226 Cal.App.3d 1651, 1657.)  Thus, even if there were some instructional error as to the murder and attempted murder counts, it could not be used to impeach the jury's finding of intent to kill as to the conspiracy count.  This finding is as true today as it was in 1991 when the jury returned its guilty verdicts.

*Appellant's Claim that Our 2021 Medrano*
*Opinion Conflicts with Our 1994 Opinion*

Appellant argues, "[T]he law of the case doctrine should not apply at all in this case [because we] rendered two irreconcilable opinions on the issue of whether the jury found that [he had]

11

harbored the specific intent to kill."  The two opinions – our 2021 opinion and our 1994 opinion in appellant's direct appeal from the judgment of conviction – are not in conflict.  In our 2021 opinion we rejected appellant's similar contention.  We noted that in the 1994 opinion "[w]e did not consider whether, by convicting appellant of conspiracy to commit first degree murder, the jury necessarily found that he had harbored the specific intent to kill." (*Medrano, supra*, 68 Cal.App.5th at p. 186.)

*Application of the Law of the Case Doctrine*
*Will Not Result in an Unjust Decision*

Appellant has not shown that, by applying the law of the case doctrine, we would be shutting our eyes to a manifest misapplication of existing principles resulting in substantial injustice.  As our Supreme Court observed: "'[A]ll conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder.'" (*People v. Beck & Cruz* (2019) 8 Cal.5th 548, 641-642.)  "[A] conviction of conspiracy to commit murder requires a finding of intent to kill . . . ." (*People v. Swain* (1996) 12 Cal.4th 593, 607.)

*The California Supreme Court's Recent*
*Decision in Curiel Is Distinguishable*

At our request, the parties filed supplemental letter briefs discussing the applicability of *Curiel, supra*, 15 Cal.5th 433, to the issue of whether appellant made a prima facie case for relief. In his supplemental brief appellant asserts, "[T]he law of the case doctrine should not bar [him] from making a prima facie case for relief based on *Curiel*."  We disagree.  *Curiel* is distinguishable.

In 2006 a jury convicted Curiel of first degree murder and found true a gang-murder special-circumstance allegation (§ 190.2, subd. (a)(22)) that required a specific intent to kill the

12

victim.  Curiel petitioned for resentencing under section 1172.6.
"He alleged . . . that he had been convicted of first degree murder
under the natural and probable consequences doctrine and could
not currently be convicted of murder because of changes to the
murder statutes enacted by [S.B.] 1437." (*Curiel, supra*, 15
Cal.5th at p. 440.)  "[T]he trial court denied Curiel's petition for
failure to state a prima facie case.  The court believed the jury's
finding that Curiel 'inten[ded] to kill,' which was required for the
gang-murder special circumstance, refuted Curiel's allegation
that he could not be convicted of murder under current law and
therefore precluded relief under [S.B.] 1437." (*Ibid.*)

The Supreme Court affirmed the Court of Appeal's
judgment reversing the trial court's decision.  The Supreme Court
stated: "We hold only that under the jury instructions here, the
findings the jury must have made are insufficient to conclusively
establish that Curiel is liable for murder under current law.  The
jury could have relied on the natural and probable consequences
doctrine to convict Curiel of murder, and the findings required
under that theory—even when combined with the finding of
intent to kill required by the gang-murder special circumstance—
do not encompass all of the elements of any theory of murder
under current law.  These findings were therefore insufficient to
rebut Curiel's allegation that he could not be convicted of murder
under current law, and the trial court erred by denying Curiel's
petition for resentencing at the prima facie stage." (*Curiel,
supra*, 15 Cal.5th at p. 471.)

The Supreme Court explained: "Although intent to kill is
certainly blameworthy, it is insufficient standing alone to render
a person culpable for another's acts.  The aider and abettor must
know the direct perpetrator intends to commit the murder or life-

13

endangering act and intend to aid the direct perpetrator in its commission." (*Curiel, supra*, 15 Cal.5th at p. 468.) "Under the court's instructions, the jury was not required to make these findings. Because the jury was instructed on the natural and probable consequences doctrine, the jury was required to find only that Curiel knew that [the actual killer] intended to commit one of the underlying target offenses [disturbing the peace or carrying a concealed firearm by a gang member] and that Curiel intended to aid him in *that* offense, not murder.[3] . . . While the jury separately found Curiel intended to kill, such an intent standing alone is insufficient to establish the requisite mens rea for aiding and abetting murder. The essence of aiding and abetting is involvement in the crime of another. The aider and abettor must become 'concerned' with the crime itself. (§ 31.) '[A] person "chooses to become a part of the criminal activity of another"' and '"says in essence, 'your acts are my acts.'"'" (*Ibid.*)

---

[3] The jury was instructed: " 'To prove that the defendant is guilty of murder under the theory of aiding and abetting [based on] natural and probable consequences, the People must prove beyond a reasonable doubt that [1] the defendant is guilty of disturbing the peace or of carrying a concealed firearm by a gang member; [2] during the commission of the crime of disturbing the peace or of the crime of carrying a concealed firearm by a gang member the crime of murder was committed; and [3] under all the circumstances a reasonable person in the defendant's position would have known that the commission of murder was a natural and probable consequence of the commission of the crime of disturbing the peace or of the crime of carrying a concealed firearm by a gang member.'" (*Curiel, supra*, 15 Cal.5th at p. 446.)

14

Unlike *Curiel*, appellant was convicted of conspiracy to commit first degree murder. Thus, the target offense was not an underlying offense other than murder, such as assault with a firearm. *The target offense was murder.* Appellant and his accomplices formed a conspiracy to commit murder during a drive-by shooting. "The mental state elements of conspiracy require the prosecution to demonstrate the defendant had the specific intent both to agree to the conspiracy and to commit the object offense." (*People v. Ware* (2022) 14 Cal.5th 151, 164.) As we stated in *Medrano, supra,* 68 Cal.App.5th at p. 184, "First degree murder was the object of the conspiracy, not the natural and probable consequence of an act committed to further the object of the conspiracy." (See *People v. Jurado* (2006) 38 Cal.4th 72, 123 ["For a conspiracy to commit murder, intent to commit the target offense means an intent to kill"].)

Accordingly, the jury must have found that appellant knew his co-conspirator, Throop, intended to commit murder and that appellant intended to aid Throop in committing murder. The jury was instructed, "'A conspiracy is an agreement entered into between two or more persons with the specific intent to agree to commit the public offense of first degree murder and with the further specific intent to commit such offense . . . .'" (*Medrano, supra,* 68 Cal.App.5th at p. 185, fn. 4.)

Because the facts, jury instructions, and verdicts in the present case are different from those in *Curiel*, the Supreme Court's holding in *Curiel* is of no assistance to appellant. (See *Curiel, supra,* 15 Cal.5th at p. 471 ["our holding today does not necessarily apply to other cases where the jury found intent to kill . . . . The jury instructions in other cases might be materially

15

different, and they might therefore have required different factual findings by the jury"].)

<em>Disposition</em>

The order denying appellant's second section 1172.6 petition for resentencing is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

16

Michele M. Castillo, Judge

Superior Court County of Ventura

_____

Claudia Y. Bautista, Public Defender, William Quest, Snr. Deputy Public Defender, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.