Filed 2/27/26  P. v. Quijano CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>MARIA QUIJANO,<br><br>        Defendant and Appellant. | B339719<br><br>(Los Angeles County Super. Ct. No. LA048968) |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed.

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland and Susan Sullivan Pithey, Assistant Attorneys General, Stacy Schwartz and Colleen M. Tiedemann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2008, a jury convicted Maria Quijano (appellant) of conspiracy to commit murder and first degree murder and found true the special circumstance that the murder was committed for financial gain.

In 2022, appellant filed a petition for resentencing under Penal Code[1] section 1172.6.  The trial court summarily denied the petition because the record of conviction shows that appellant is ineligible for relief as a matter of law.  We agree and affirm.

**BACKGROUND**

In 2005, appellant paid a man to kill her husband, Reynaldo Quijano.  That man hired several others to do the job, and one of them shot the husband to death in his car.[2]

A jury convicted appellant of conspiracy to commit murder (§ 182, subd. (a)(1)) and first degree murder (§ 187, subd. (a)), and found true firearm allegations (§ 12022, subd. (a)(1)) and the special circumstance that the murder was committed for financial gain (§ 190.2, subd. (a)(1)).

Appellant was sentenced to life in prison without the possibility of parole.  We affirmed her conviction on direct appeal. (*People v. Quijano, supra*, B207955.)

In 2022, appellant filed a petition for resentencing under section 1172.6, and the trial court appointed counsel.  The People filed an opposition to the petition, and appellant filed a reply. The trial court then set an order to show cause, before staying the case pending our high court's decision in *People v. Curiel* (2023) 15 Cal.5th 433.  The court then recalled its decision to set an

---

[1] Undesignated statutory references are to the Penal Code.

[2] These facts are drawn from the unpublished decision in appellant's direct appeal from her conviction.  (*People v. Quijano* (Oct. 19, 2009, B207955).)

2

order to show cause and summarily denied appellant's petition, concluding that the jury instructions preclude the possibility that appellant was convicted under a now invalid theory of murder.

## DISCUSSION

### 1. Applicable legal principles

The Legislature enacted Senate Bill No. 1437 in 2018, abolishing the natural and probable consequences doctrine in cases of murder and limiting the application of the felony-murder rule. (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The legislation bars murder convictions premised on any theory of imputed malice—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless indifference to human life. (§§ 188, subd. (a)(3) & 189, subd. (e).) Specifically, the Legislature amended section 188 to require that, when the felony-murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); see *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)

Section 1172.6 contains the procedure for vacating the murder convictions of defendants who could no longer be convicted because of the amendments to sections 188 and 189. (*Lewis, supra,* 11 Cal.5th at pp. 957, 959, 971.) After appointment of counsel (if requested), the trial court must permit briefing and hold a hearing "to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c); see

3

*Lewis*, at p. 971.) At this stage, the trial court can and should look to the record of conviction. (*Lewis, supra,* at pp. 970–971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry . . . allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) If a prima facie case is made—that is, if the petitioner is not ineligible as a matter of law—the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(1); see *People v. Coley* (2022) 77 Cal.App.5th 539, 543.)

Whether a petitioner has made a prima facie case for relief under section 1172.6 is a purely legal issue subject to de novo review. (*People v. Saavedra* (2023) 96 Cal.App.5th 444, 447.)

**2.     The record shows that appellant is ineligible for relief as a matter of law**

Appellant argues that she is not ineligible for relief as a matter of law because the jury was instructed on the natural and probable consequences doctrine, and the instructions did not require the jury to find the mens rea and actus reus necessary for direct aiding and abetting. We disagree. Although the jury was instructed on natural and probable consequences, it was also instructed on direct aiding and abetting, and the instructions given on the financial gain special circumstance and conspiracy to commit murder required the jury to find that appellant specifically harbored the intent to kill.[3] (See *People v. Medrano*

_____

[3] We granted appellant's request for judicial notice of the record from the direct appeal (*People v. Quijano, supra,* B207955).

4

(2024) 98 Cal.App.5th 1254, 1265; *People v. Cortez* (1988) 18 Cal.4th 1223, 1226 [conspiracy to commit murder requires intent to kill].)  The instruction on the financial gain special circumstance required the jury to find that appellant "intended to kill" and that the killing was done for financial gain.  (CALCRIM. No. 720.)  The conspiracy to commit murder instruction (CALCRIM No. 563) required the jury to find that appellant agreed with others "to intentionally and unlawfully kill another person," and that one or more members of the conspiracy committed at least one of the overt acts enumerated in the complaint.  (See *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 645 [where defendants were convicted of conspiracy to commit *murder*, there was no possibility they were found guilty of murder on a natural and probable consequences theory]; *People v. Allen* (2023) 97 Cal.App.5th 389, 395–396.)

These instructions foreclose the possibility that appellant was convicted of murder on a theory of imputed malice, thereby rendering her ineligible for relief under section 1172.6 as a matter of law.  (See *People v. Whitson* (2022) 79 Cal.App.5th 22, 31–32 (*Whitson*).)  Appellant resists this conclusion, arguing that the jury's findings that appellant intended to kill did not require "a union of act and intent."  She argues that because the killing itself occurred after she had conspired with others to kill her husband, the jury did not necessarily find that she still harbored the intent to kill at the time her husband was actually shot.  This argument ignores that a defendant's liability for a coconspirator's pursuit of the object of the conspiracy (here, murder) continues until she affirmatively rejects or repudiates it and communicates that repudiation to her former cohorts.  (*People v. Lovejoy* (2024) 101 Cal.App.5th 860, 869.)  In the absence of such repudiation, a

defendant is "criminally responsible" for all efforts to achieve the object without any additional finding regarding her "specific mental state at the time of the shooting." (*Ibid*.) Because there was no finding of any repudiation by appellant, the killing by her coconspirator qualifies as appellant's own actus reus for the purpose of direct aiding and abetting. (See *Whitson*, at p. 36 ["A jury's finding that a defendant is guilty of conspiracy to murder, when a murder has in fact been committed, is 'in effect [a finding] that [the defendant] was a direct aider and abettor of the killing[]' "].)

Appellant relies on *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*) to argue that her jury's findings do not foreclose relief under section 1172.6 as a matter of law. *Curiel* is readily distinguishable. The court there held that the jury's finding on a gang-murder special circumstance that the defendant harbored the intent to kill did not show he was ineligible for relief under section 1172.6 as a matter of law where the jury was also instructed on natural and probable consequences. The instructions for the gang-murder special circumstance were: " 'the People must prove that: [1] the defendant intended to kill; [2] at the time of the killing the defendant was a member in a criminal street gang; and [3] the murder was carried out to further the activities of the criminal street gang.' " (*Curiel*, at p. 447.) The instructions given in *Curiel* only required the jury to find that the defendant knew the direct perpetrator intended to commit one of the underlying target offenses and that he intended to aid the perpetrator in *that* offense, not murder. (*Curiel*, at p. 468.) Such is not the case here, where appellant was convicted of conspiracy to commit murder, meaning that the target offense was murder and that appellant knew (by having

6

agreed with the others) that other members of the conspiracy also intended to kill the victim.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.


We concur:


CHAVEZ, J.


RICHARDSON, J.

7